UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SCANNED

| | | |
|---|---|---|
| LIFESPAN PHYSICIANS PROFESSIONAL SERVICE ORGANIZATION and THE MIRIAM HOSPITAL | ) | |
| V. | ) | C.A. NO. 05-239S |
| HEALTHCARE VALUE MANAGEMENT, INC. and IRON WORKERSS DISTRICT COUNCIL OF NEW ENGLAND WELFARE FUND | ) | |

**DEFENDANT IRON WORKERS DISTRICT COUNCIL OF NEW ENGLAND WELFARE FUND'S MOTION TO DISMISS**

Pursuant to Fed.R.Civ P. 12(b) (2), the defendant Iron Workers District Council of New England Welfare Fund ("the Iron Workers Fund") moves that this Court dismiss the action against it for lack of *in personam* jurisdiction.

Defendant, Iron Workers District
Council of New England Welfare
Funds
By its attorneys,

Michael J. Lepizzera, Jr., #4995

Christian C. Potter, #5359
Lepizzera and Laprocina
301 Metro Center Blvd., #102
Warwick, Rhode Island 02886
(401) 739-7397
(401) 384-6950

REQUEST FOR ORAL ARGUMENT – Oral argument will assist the Court to better understand the issues involved in the motion and will allow the Iron Workers Fund to clarify its position on the facts and the law. The Iron Workers Fund estimates 25 minutes for the time needed for a hearing on this motion.

**CERTIFICATION**

I certify that on this 29th day of July 2005 a true and accurate copy of the within was mailed to Linn Foster Freedman, Nixon Peabody, LLP, One Citizens Plaza, Providence, Rhode Island 02903 and faxed to Linn Foster Freedman @ (866) 807-6614.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIFESPAN PHYSICIANS PROFESSIONAL SERVICE ORGANIZATION and THE MIRIAM HOSPITAL<br>Plaintiffs,<br><br>V.<br><br>HEALTHCARE VALUE MANAGEMENT, INC. and IRON WORKERSS DISTRICT COUNCIL OF NEW ENGLAND WELFARE FUND<br>Defendants | ) | C.A. NO. 05-239S |

**DEFENDANT IRON WORKERSS DISTRICT COUNCIL OF NEW ENGLAND WELFARE FUND'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

**Statement of Facts**

The defendant Iron Workers District Council of New England Welfare Fund ("the Iron Workers Fund") is a non-profit trust fund organized under the laws of the Commonwealth of Massachusetts. As an ERISA trust fund, it provides for the payment of medical benefits to its eligible participants (Broderick Aff. ¶2). The Iron Workers Fund has always maintained its offices in Boston, Massachusetts only (Aff. ¶3).

The Iron Workers Fund has never entered into a contract with the plaintiffs (Aff. ¶5). The contract between the Iron Workers Fund and the defendant HCVM makes no mention or reference to the plaintiffs or to any contract that may exist between HCVM and the plaintiffs (Aff. ¶5, 7 and 8).

In the contract between HCVM and the Iron Workers Fund, HCVM re-prices medical bills that are incurred by eligible participants in the Iron Workers Fund (Aff. ¶6).

A participant in an Iron Workers Fund, "John Doe", as he is identified in plaintiffs' complaint, received medical services from the plaintiff Miriam Hospital. In January 2004, Miriam Hospital initiated contact with the Iron Workers Fund by mailing a medical bill incurred by "John Doe" to HCVM (Aff. ¶10). After receiving a re-priced bill from HCVM, the Iron Workers Fund on two occasions, mailed a check to Miriam Hospital towards payment of the medical services provided to "John Doe", in accordance with the Iron Workers Fund plan of benefits for participants in the Iron Workers Fund (Aff. ¶11). During a telephone call from Lifespan to the Iron Workers Fund, the Iron Workers Fund did request a copy of "John Doe"'s medical records (Aff. ¶11). As to plaintiffs' claims, the Iron Workers Fund has had no further contact with Rhode Island.

The plaintiffs, in their complaint, assert that the Iron Workers Fund is obligated to pay further amounts towards the medical bill incurred by the ironworker participant, "John Doe".

**Argument**

THIS COURT, AS THE FORUM COURT, HAS NO PERSONAL JURISDICTION OVER THE NON-RESIDENT DEFENDANT, THE IRON WORKERS FUND.

It has been long-settled law that the United States Constitution requires that non-resident defendants must have minimum contacts with the forum state so that maintenance of the suit against such defendant "does not offend traditional notions of fair play and substantial justice", International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945) (quoted in Sullivan v. Tagliabue, 785 F.Supp. 1076 (D.R.I. 1992) and Rose v. Firstar Bank, 819 A.2d 1247 (R.I. 2003)).

The plaintiff must prove or allege facts that are sufficient for the existence of either general or specific personal jurisdiction, International Shoe, 326 U.S. at 318, 66 S.Ct at 159; Rose, 819 at 1250. Furthermore, non-resident defendants in actions brought in the U.S. District

Court for the District of Rhode Island must be within the scope of the Rhode Island long-arm statute (R.I.G.L. §9-5-33) for plaintiffs to establish that such non-resident defendants are subject to service of process, New England Health Care Employees Union Dist. 1199 v. Fall River Nursing Home, Inc., 802 F.Supp 674 (D.R.I. 1992).

## A. General Personal Jurisdiction Over the Defendant Iron Workers Fund Does Not Exist

For general personal jurisdiction, a non-resident defendant must have systemic and continuous contacts in Rhode Island, Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868 (1984); Sullivan v. Tagliabue, 785 F. Supp. 1076 (D.R.I. 1992); Creverus Partners v. Gadsby & Hannah, LLP, 836 A.2d 1113 (R.I. 2003). In the case at bar, the Iron Workers Fund maintains no contacts with Rhode Island. Specifically, the Iron Workers Fund is a Massachusetts trust fund with its only offices in Boston, Massachusetts (Aff. ¶2, 3). Further, the Iron Workers Fund owns no property in Rhode Island, does not hold any bank accounts in Rhode Island, has no telephone listing in Rhode Island, does not advertise in Rhode Island, has no agent located in Rhode Island, does not solicit any business in Rhode Island, is not registered to do business in Rhode Island and does not pay any taxes in Rhode Island (Aff. ¶4).

This lack of continuous, purposeful and systematic contacts in Rhode Island by the Iron Workers Fund is very similar to the facts in Sullivan v. Tagliabue, supra, as to the defendant NFL, 785 F.Supp. at 1081 (D.R.I. 1992). This Court held that there was no general jurisdiction over the non-resident defendant. Also, here, the plaintiffs have not alleged in their complaint any facts to establish general personal jurisdiction over the Iron Workers Fund. Thus, on the basis of general jurisdiction, the Iron Workers Fund cannot be subject to personal jurisdiction in a Rhode Island forum.

B. Specific Personal Jurisdiction Over the Defendant Iron Workers Fund Does Not Exist

Specific personal jurisdiction is present only when the plaintiff's claims arise directly from a defendant's significant contacts in the forum state, International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154 (1945). Referencing its prior decisions and those of the U.S. Supreme Court, the First Circuit has outlined the three-step process in determining whether there is specific jurisdiction over a non-resident defendant, Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). The Court must first find that the plaintiffs' claims directly relate to contacts by the defendant with the forum state. Then, inquiry is made as to whether these contacts "constitute purposeful availment of the benefits and protections afforded by the forum's laws", 196 F.3d at 288. If, and only if, the plaintiffs' cause of action passes these first two barriers, the court then must perform the third step in the analysis (i.e. whether exercise of jurisdiction over the defendant is reasonable as to fundamental fairness factors).

Here, the plaintiffs are alleging terms of a contract between the defendant Iron Workers Fund and the defendant HCVM. In paragraph 6 of the complaint, the plaintiffs are implying that somehow that a contract between Lifespan and HCVM is binding on the Iron Workers Fund through the Fund's own contract with HCVM; this is the basis of plaintiffs' assertion of the personal jurisdiction over the Iron Workers Fund (¶10 of the complaint).

First, this allegation is admittedly "upon information and belief" of the plaintiffs. The plaintiffs do not have personal knowledge of the actual terms of the contract between the Iron Workers Fund and HCVM. The Iron Workers Fund, on the basis of its own actual knowledge, specifically denies that the Iron Workers Fund has any contract with the plaintiffs or that the

contract between the Iron Workers Fund and HCVM obligates payment to Miriam Hospital. Thus, the plaintiffs' assertion that this court has personal jurisdiction over the Iron Workers Fund is based on admitted conjecture and speculation; it is contradicted by direct, personal knowledge set forth the Iron Workers Fund affidavit (Aff. ¶7, 8).

Second, even assuming that there is a contractual relationship between the plaintiffs and the Iron Workers Fund, as to *in personam* jurisdiction, this Court has previously held that "merely contracting with a party who resides in the desired forum is insufficient to subject a non-resident to the forum's jurisdiction", New England Health Care Employees Union Dist. 1199 v. Fall River Nursing Home, Inc., 802 F.Supp. 674, 678 (D.R.I. 1992); accord, Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 292 (1st Cir. 1999); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478-479, 105 S.Ct. 2174 (1985). In the instant case, the plaintiffs' allegation of a contractual obligation is not enough to establish personal jurisdiction by this court over the Iron Workers Fund.

The Iron Workers Fund, on two separate occasions, mailed to Rhode Island a check to the plaintiff Miriam Hospital towards the bill incurred by a participant in the Iron Workers Fund. The First Circuit in Phillips Exeter Academy, 196 F.3d at 291, clearly reiterated the principle that when a non-resident defendant sends payments to a location in the forum state pursuant to any contract, the defendant does not submit itself to personal jurisdiction in that forum. This Court decided in New England Health Care, 802 F.Supp. at 678, that it is the activities of the non-resident defendant in Rhode Island, and **not** the resident of the plaintiff, which is the element as to whether there is specific personal jurisdiction. In the case at bar, the Iron Workers Fund mailed two checks to the plaintiff Miriam Hospital and, participated in telephone conversations with Lifespan, which communication was not initiated by the Iron Workers Fund (Aff. ¶11). In

Creverus Partners v. Gadsby & Hannah, LLP, 836 A.2d 1113, 1120 (R.I. 2003), the Supreme Court of Rhode Island noted that even when the non-resident defendant mailed hundreds of thousands of dollars worth of billings to Rhode Island, this did not constitute minimum contacts for establishing specific personal jurisdiction. Clearly, the limited and sporadic contact by the Iron Workers Fund with the plaintiffs is insufficient to result in personal jurisdiction by a Rhode Island forum over the Iron Workers Fund.

In this matter, the plaintiffs' claims do not directly relate to the limited contacts by the Iron Workers Fund with Rhode Island. Even if it assumed *arguendo* that the plaintiffs' claims do, in fact, have a direct relation, the plaintiffs' cause of action must pass the second hurdle in the specific jurisdiction analysis – whether the Iron Workers Fund, as the non-resident defendant, "purposefully availed itself of the privileges, benefits and protections of [Rhode Island]", Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183 (1985) (quoted in Anderson v. Metropolitan Life Insurance Co., 694 A.2d 701, 703 (R.I. 1997) (per curiam); accord, Phillips Exeter Academy, 196 F.3d at 292 (1st Cir. 1999).

In both Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228 (1958) and in Rose v. Firstar Bank, 819 A.2d 1247 (R.I. 2003), the non-resident defendant had sent checks to the plaintiff who resided in the forum state. The non-resident defendant also had a few sporadic communications with the plaintiff. In both instances, the Courts held that this was not enough to constitute a purposeful availment of the privileges of conducting business in the forum state. As the Supreme Court of Rhode Island reasoned in Rose:

> *Hanson* emphasized that the claim must be linked to the [defendant] having purposefully availed itself of the benefits of doing business in the forum state for personal jurisdiction... See Hanson, 357 U.S. at 253, 78 S.Ct at 1240 .... Rose v. Firstar Bank 819 A.2d at 1253.

Here, the facts cannot be distinguishable from those in Hanson and in Rose. The Iron Workers Fund mailed checks to Rhode Island and also had sporadic communications with the plaintiffs (Aff. ¶11). This, too, is not enough to conclude that the Iron Workers Fund purposefully availed itself of the benefits and privileges in Rhode Island. As it relates to plaintiffs' claims, the Iron Workers Fund had insufficient minimal contact with Rhode Island when it mailed checks to the forum state and participated in sporadic communications with the plaintiffs. This is the same type of activity which the Court in Rose determined was not a purposeful availing of the privilege of doing business in Rhode Island by the defendant, Rose, 819 A.2d at 1255.

In Phillips Exeter Academy, 196 F.3d at 292 (1st Cir. 1999), the First Circuit concluded that by remitting payments to the plaintiff and communicating with the plaintiff on several occasions, the non-resident defendant did not benefit from the laws of the forum state. The defendant in Phillips Exeter Academy was not, therefore, subject to personal jurisdiction of the forum court. (Similarly, the Iron Workers Fund mailed checks to plaintiff Miriam Hospital and had limited communications, which were initiated by the plaintiff Lifespan.)

Whether or not, and to what extent, the Iron Workers Fund may be contractually obligated to the plaintiffs for services incurred by the patient "John Doe" is irrelevant. It is whether the Iron Workers Fund purposefully conducted business in the forum state, Rhode Island, so as to avail the Iron Workers Fund of the privileges, benefits and protections of Rhode Island that determines if this court has personal jurisdiction over the Fund, Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026 (1987); the defendant's actions must be **purposefully** directed towards the forum state. The Iron Workers Fund took no purposeful action in Rhode Island that could be construed as availing itself of such privileges, benefits and protections of Rhode Island.

Plaintiffs' putative claims arise from the receipt of medical services by "John Doe" and from the mailing of a medical bill to Massachusetts by Miriam Hospital for these same services. It was "John Doe"'s decision to obtain treatment at Miriam Hospital (Aff. ¶8). Also, it was Miriam Hospital that initiated the contact with the Iron Workers Fund by mailing the medical bill of "John Doe", the ironworker participant, to HCVM in Norwood, Massachusetts (Aff. ¶10). Lastly, it was the plaintiff Lifespan that initiated any telephone conversations with the Iron Workers Fund to discuss the payment by the Iron Workers Fund towards the medical bill.

The Supreme Court of Rhode Island, in adopting the reasoning and the language in a U.S. Supreme Court opinion, has stated "the unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State", Rose v. Firstar Bank, 819 A.2d 1247, 1255 (R.I. 2003) (quoting Hanson v. Denckla, 357 U.S. at 253, 78 S.Ct. at 239-40). Any contact that the Iron Workers Fund had with Rhode Island as to the plaintiffs' claim was as a result of communications initiated by the plaintiffs, or as a result of "John Doe" seeking treatment at Miriam Hospital. The Iron Workers Fund did not solicit business from the plaintiffs; it only responded to the medical bill that Miriam Hospital had mailed to HCVM.

It was Miriam Hospital that initiated the contact with the Iron Workers Fund by mailing to Massachusetts the medical bill to HCVM (which then, after re-pricing, forwarded it to the Iron Workers Fund). As it relates to plaintiffs' claim, the defendant Iron Workers Fund did not solicit business from the plaintiffs...

> Without evidence that the [Iron Workers Fund] actually reached out to the plaintiff[s'] state of residence to *create* a relationship – say, by solicitation... – the mere fact that the [Iron Workers Fund] willingly entered into a tendered relationship does not carry the day, Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196

F.3d 284, 292 (1st Cir. 1999) [emphasis in original], (quoted in Rose v. Firstar Bank, 819 A.2d 1247, 1255 (R.I. 2003)).

In the instant case, the plaintiffs' claims do not directly relate to any contacts by the Iron Workers Fund in Rhode Island. Also, it cannot be demonstrated that any actions by the Fund availed itself of the benefits and protections of Rhode Island. Neither of the first two hurdles can be cleared in the specific jurisdiction analysis. In short, there is nothing in the Iron Workers Fund's contacts with Rhode Island that would make the Iron Workers Fund reasonably anticipate being hauled into a Rhode Island court; as such, there is a lack of specific personal jurisdiction, World- Wide Volkswagen v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567 (1980); and New England Health Care Employees Union Dist. 1199 v. Fall River Nursing Home, Inc., 802 F.Supp. 664, 677; Rose v. Firstar Bank, 819 A.2d 1247, 1255 (R.I. 2003).

C. The Rhode Island Long-arm Statute Does Not Apply To Claims Against the Defendant Iron Workers Fund

Federal Rule of Civil Procedure 4(e) only allows extraterritorial service to the extent permitted by the law in which the District Court sits. Regardless of the U.S. Constitution's restrictions on personal jurisdiction over a non-resident defendant, the Rhode Island's long-arm statute must apply to the Iron Workers Fund before it can be subject to service of process, Sullivan v. Tagliabue, 785 F.Supp. 1076 (D.R.I. 1992) and New England Health Care Employees Union Dist. 1199 v. Fall River Nursing Home, Inc., 802 F.Supp 674 (D.R.I. 1992).

The provisions of the Rhode Island long-arm statute, R.I.G.L. §9-5-33, are specific. As to service of process, the statute applies to certain non-resident entities. The statute enumerates only particular categories of defendants: natural persons, corporations, partnerships and associations. The Iron Workers Fund is a trust fund (Aff. ¶2); it is not covered by the Rhode

Island long-arm statute. Therefore, since the Iron Workers Fund is not within the scope of Rhode Island's long-arm statute, it cannot be subject to personal jurisdiction or service of process issued by this court.

Defendant, Iron Workers District
Council of New England Welfare
Funds
By its attorneys,

Michael J. Lepizzera, Jr.

Michael J. Lepizzera, Jr., #4995

Christian C. Potter

Christian C. Potter, #5359
Lepizzera and Laprocina
301 Metro Center Blvd., #102
Warwick, Rhode Island 02886
(401) 739-7397
(401) 384-6950

**CERTIFICATION**

I certify that on this 29th day of July 2005 a true and accurate copy of the within was mailed to Linn Foster Freedman, Nixon Peabody, LLP, One Citizens Plaza, Providence, Rhode Island 02903 and faxed to Linn Foster Freedman @ (866) 807-6614.

Karen Ross

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LIFESPAN PHYSICIANS PROFESSIONAL SERVICE ORGANIZATION and THE MIRIAM HOSPITAL
Plaintiffs,

C.A. NO. 05-239S

v.

HEALTHCARE VALUE MANAGEMENT, INC. and IRON WORKERS DISTRICT COUNCIL OF NEW ENGLAND WELFARE FUND
Defendants.

**AFFIDAVIT OF THOMAS E. BRODERICK IN SUPPORT OF MOTION TO DISMISS BY THE DEFENDANT IRON WORKERS DISTRICT COUNCIL OF NEW ENGLAND WELFARE FUND**

1. I am Thomas E. Broderick, and I am the Fund Administrator of the Iron Workers District Council of New England Welfare Fund ("the Fund").

2. The Fund is a non-profit, ERISA trust fund organized under the laws of Massachusetts. The Fund provides the payment of medical benefits for eligible ironworker participants in the Fund.

3. Since its formation in 1952, the Fund has always maintained its administrative offices in Boston, Massachusetts. The Fund Office is currently located in the Dorchester section of Boston. The Fund has never maintained a place of business anywhere else.

4. The Fund does not maintain any office in Rhode Island, does not hold any bank accounts in Rhode Island, does not maintain a post office box in Rhode Island, does not maintain a telephone listing in Rhode Island, does not advertise in Rhode Island, does not have any agent located in Rhode Island, does not own any real or personal property in Rhode Island, does not conduct any business in Rhode Island, does not solicit business in Rhode Island, does not pays taxes to the State of Rhode Island (or any of its political subdivisions), and is not registered to do business in Rhode Island.

5. The Fund has never entered into any contract or agreement with the plaintiff Miriam Hospital or with the plaintiff Lifespan Physicians Professional Service Organization ("Lifespan"). In fact, the Fund has no contract with any hospital or physician, whether within or outside of Rhode Island.

6. The Fund does have a contract with the defendant Healthcare Value Management, Inc. ("HCVM"), a preferred provider organization ("PPO"), whereby HCVM re-prices bills from hospitals and physicians who treat eligible ironworker participants in the Fund.

7. No contract or agreement between the Fund and HCVM incorporates the terms of any contract HCVM may have with a hospital or a professional service group. Neither does any contract between the Fund and HCVM make any reference to a specific hospital, professional service group or physician with whom HCVM may have a contract. No contract between the Fund and HCVM incorporates or makes reference to any contract that may exist between HCVM and Miriam Hospital. No contract between the Fund and HCVM incorporates or makes reference to any contract that may exist between HCVM and Lifespan. No contract between the Fund and HCVM requires payment by the Fund to Miriam Hospital.

8. HCVM does not act, and never has acted, as an agent for the Fund. The Fund has never entered into a contract with Miriam Hospital or with Lifespan whereby the Fund would pay bills incurred by participants in the Fund. As to the payment of medical bills, the Fund only has an obligation to the participants in the Fund's plan of benefits. In addition, it is the ironworker participant, not the Fund, who decides which hospital or physician will treat him or her.

9. When the Fund receives from HCVM a re-priced hospital bill for an eligible ironworker participant, the Fund pays on the bill according to the terms of its plan of benefits.

10. In January 2004, concerning plaintiffs' claims against the Fund, the plaintiff Miriam Hospital initiated contact when the hospital mailed a medical bill incurred by "John Doe", as he is named in plaintiffs' complaint. Miriam Hospital mailed this bill to the HCVM which is located in Norwood, Massachusetts.

11. In connection with the facts of the claim in this action, the following are the Fund's limited contacts with Rhode Island:

(a) On 3/1/04, after receiving the re-priced bill from HCVM, the Fund mailed a check in the amount of $36,673.90 to Miriam Hospital in payment towards the bill incurred by the ironworker participant, "John Doe" and advised the remaining charges were under review.

(b) In May of 2004, Lifespan contacted the Fund by telephone concerning further payment on the medical bill. The Fund, at that time, advised it was awaiting a copy of "John Doe"'s medical records as part of an on-going review of the hospital's charges; the Fund

would then immediately send $200,000.00 as a payment towards the bill incurred by the ironworker participant. Upon assurances by Lifespan that it would do so, the Fund, on May 20, 2004, mailed to Miriam Hospital a check representing the $200,000.00 payment.

(c) On May 25, 2004, the Fund faxed a memorandum to Lifespan confirming that the Fund had, in fact, mailed the $200,000.00 payment.

12. Never has the Fund made itself subject to the jurisdiction of Rhode Island courts. Never has the Fund agreed to be subject to service of process issued in Rhode Island.

Signed under the penalties of perjury this 27th day of July, 2005.

Thomas E. Broderick

COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.

On this 27th day of July, 2005, before me, the undersigned notary public, personally appeared Thomas E. Broderick, proved to me through satisfactory evidence of identification, which was personal knowledge, to be the person who signed on the preceding or attached document in my presence, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

James M. Langan Jr.
Notary Public
My Commission Expires: 10/29/2010

JAMES M. LANGAN, JR.
Notary Public
Commonwealth of Massachusetts
My Commission Expires
October 29, 2010