UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIFESPAN PHYSICIANS PROFESSIONAL SERVICE ORGANIZATION, and THE MIRIAM HOSPITAL | : : : : | |
| v. | : : | C.A. No. 05-239S |
| HEALTHCARE VALUE MANAGEMENT INC. and IRON WORKERS DISTRICT COUNCIL OF NEW ENGLAND WELFARE FUND | : : : : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is presently before the Court on a Motion to Dismiss (Document No. 6) (the "Motion") filed by Defendant, Iron Workers District Council of New England Welfare Fund (the "Fund"). The Fund seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(2) on the ground that this Court lacks personal jurisdiction over it. Plaintiffs filed a timely Objection to the Fund's Motion to Dismiss (the "Objection") (Document No. 10). The Fund's Co-defendant, Healthcare Value Management, Inc. ("HVM"), answered Plaintiffs' Complaint on July 12, 2005. (Document No. 5).

The Motion has been referred to me for preliminary review, findings and recommended disposition. See 28 U.S.C. § 636(b)(1)(B); D.R.I. Local R. 32(c). A hearing was held on September 30, 2005. After reviewing the Motion and the Objection, in addition to performing independent research, this Court recommends that the Fund's Motion to Dismiss (Document No. 6) for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) be DENIED.

**Facts**

The Iron Workers District Council of New England is a labor organization representing skilled construction workers throughout New England. The District Council consists of seven regional local unions which have a presence in each of New England's six states. Rhode Island is covered by Iron Workers Union Local No. 37 which is headquartered in East Providence, Rhode Island.

As part of the benefits package available to District Council members and retirees, the District Council has established the Fund, a self-insured health and welfare fund, to provide medical, dental, vision and other fringe benefits to eligible members and retirees. As to medical benefits, the amount covered by the Fund for healthcare services depends on whether the participant uses a PPO or non-PPO provider. A PPO is a preferred provider organization. The Fund makes available to its participants "benefits and care from a network of doctors and hospitals through Healthcare Value Management Preferred Provider Organization..." See Fund's Summary Plan Description ("SPD") at p. 22. The Fund advises participants that "[s]ince PPO providers have agreed to charge for services at lower, pre-negotiated rates, you help control healthcare costs for the Plan – as well as for yourself and your family – when you use a participating provider or Hospital." Id.

Pursuant to this PPO model, the Fund established a client relationship[1] with HVM which has negotiated discounted rates for healthcare services on behalf of its clients or members. On June 1, 1998, HVM entered into a contract with Plaintiffs to provide healthcare services at pre-negotiated

---

[1] Plaintiffs allege a contractual relationship between HVM and the Fund. Comp. ¶ 10. The Fund concedes it has a contractual relationship with HVM, Aff. of Thomas Broderick at ¶ 6, but denies that HVM acts as its agent. Id. ¶ 8. The Fund does not deny that Iron Clad, its in-house claims administrator, or Ullicare, its third-party claims administrator, are its agents for purposes such as preauthorizing treatment for eligible participants.

rates to HVM's Preferred Provider Network members including the Fund. Plaintiffs' Exs. A and B1. This contract provided that HVM was representing that its members would pay for the services rendered on the agreed terms and that HVM's contracts with its members included provisions requiring timely payment for services rendered. Id. The Fund was and remains an HVM member. Aff. of Judy Randall, ¶¶ 7-8. Between October 1, 1998 and September 30, 2000, Fund participants extensively utilized services at both The Miriam Hospital ("TMH") (37 visits / $156,623.00) and Rhode Island Hospital ("RIH") (155 visits / $227,505.00). Id. ¶ 9. During 2001, Fund participants visited TMH 58 times for a total cost of $88,749.00. Id. ¶ 14.

On November 13, 2003, John Doe, a Fund participant, sought emergency treatment at TMH and was admitted for approximately two weeks. Id. ¶¶ 15-16. John Doe received extensive treatment, medication and blood products during his stay at TMH. Id. The Fund's claims administrator, Ullicare, authorized Mr. Doe's initial admission into TMH and his subsequent period of hospitalization. Id. ¶¶ 16-17. After a period of both telephone and written communication among the parties, partial payment for Mr. Doe's hospitalization was made to Plaintiffs by the Fund's in-house claims administrator, Iron Clad. Id. ¶ 21. Between August 26, 2004 and March 16, 2005, there was a string of correspondence between Judy Randall, Plaintiffs' Director of Payor Relations and Contracting, and the Fund's attorney, James M. Langan, Jr., Esquire, regarding the claimed unpaid balance for the services provided to Mr. Doe. Id. ¶¶ 22-26. The payment dispute was not resolved, and this litigation was commenced by Plaintiffs. Id. ¶ 27.

### Standard of Review

It is well established that the burden rests with the plaintiff to make a prima facie showing to withstand a challenge to personal jurisdiction. Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir.

2001) (citing Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83-84 (1st Cir. 1997)). See also, Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). In assessing the plaintiff's prima facie case, the Court must accept as true the "plaintiff's (properly documented) evidentiary proffers" and construe them "in the light most congenial to the plaintiff's jurisdictional claim." See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34, 51 (1st Cir. 1998). See also Trio Realty, Inc. v. Eldorado Homes, Inc., 350 F. Supp. 2d 322, 325 (D.P.R. 2004) (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)) (the court "draw[s] the facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff.") In setting forth the prima facie case, the plaintiff is required to bring to light credible evidence and "cannot rest upon mere averments, but must adduce competent evidence of specific facts." Barrett, 239 F.3d at 26 (citing Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995)).

Because the Fund is not located in Rhode Island, it is subject to personal jurisdiction in this Court only if it has certain minimum contacts with the forum "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). Whether sufficient minimum contacts exist depends on the quality and nature of the Fund's activity, but it is essential that there be some act by which the Fund purposefully availed itself of the privilege of conducting business within the forum state, thus invoking its benefits and protections. Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995). The "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random', 'fortuitous', or 'attenuated' contacts..." Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 475 (1984). In applying the minimum contacts analysis, the courts recognize two types of jurisdiction – specific and general.

### A. General and Specific Jurisdiction

In this case, there is no claim of general jurisdiction over the Fund. However, Plaintiffs contend the Court should find that there is specific jurisdiction over the Fund. The Supreme Court has stated that: "where plaintiff's claims 'arise out' of or are 'directly related' to defendant's contacts with the forum state, a court exercises specific jurisdiction." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, n.8 (1984).

In the analysis of specific jurisdiction, the court applies two general rules. First, the forum in which the Federal District Court sits must have a long-arm statute that grants jurisdiction over the defendant. See Barrett, 239 F.3d at 26. Second, "the plaintiff must...show sufficient minimum contacts such 'that the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution.'" LaVallee v. Parrot-Ice Drink Prod. of Am., Inc., 193 F. Supp. 2d 296, 302 (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)). Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33, authorizes a court to exercise jurisdiction over non-resident defendants to the fullest extent permitted by the United States Constitution. See Donatelli v. Nat'l Hockey League, 893 F.2d 459, 461 (1st Cir. 1990); see also Morel ex rel. Moorehead v. Estate of Davidson, 148 F. Supp. 2d 161 (D.R.I. 2001). Accordingly, the Court need only decide whether the assertion of personal jurisdiction over the Fund comports with due process principles.

### B. Due Process Considerations

Where specific jurisdiction is asserted, the First Circuit has developed a three-prong test for analyzing the due process considerations for the existence of specific personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992). In order for a court to exercise specific personal jurisdiction, all three factors – relatedness, purposefulness and reasonableness – must be satisfied.

As part of the minimum contacts analysis, the First Circuit "distinguishes between active and passive out-of-state purchasers." Howell Labs., Inc. v. Clear Channel Communications, Inc., 751 F. Supp. 258, 260 (D. Me. 1990). The First Circuit has also stated the importance of: "evinc[ing] a special concern for formulating a jurisdictional rule that would protect wholly passive purchasers, who do no more than place an order with an out of state merchant and await delivery." Id. (quoting Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 931-32 (1st Cir. 1985)). Merely ancillary activity by a defendant would not allow a court to exercise personal jurisdiction. It must "...rise above that of a purchaser who simply places an order and sits by until the goods are delivered." Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079, 1084 (1st Cir. 1973). As part of its analysis, this Court will also consider whether the Fund acted as a purchaser, and, if so, an active or passive one.

**1.    Relatedness**

The first prong of the due-process test is a consideration of relatedness. To meet the relatedness requirement of specific personal jurisdiction, "the claim underlying the litigation must

directly arise out of, or relate to, the defendant's forum-state activities." United Elec., 960 F.2d at 1089. Relatedness is intended to be a "flexible, relaxed standard." Sawtelle, 70 F.3d at 1389 (citing Pritzker, 42 F.3d at 61). In a contract case, relatedness is established if the defendant's contacts with the forum "were instrumental either in the formation of the contract or in its breach." Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999).

Plaintiffs claims against HVM and the Fund for breach of contract (nonpayment), quantum meruit and unjust enrichment all arise out of healthcare services provided at TMH in late 2003 to Mr. Doe, a Fund participant. In her Affidavit, Ms. Randall avers that Plaintiffs provided services to Mr. Doe based on Plaintiffs' services agreement with HVM and HVM's identification of the Fund as one of its payor members. Although the Fund denies that HVM was its agent, it admits the existence of a contract between the Fund and HVM whereby HVM "re-prices" bills from healthcare providers who treat "eligible ironworker participants in the Fund." Aff. of Broderick, ¶ 6. Further, Ms. Randall avers that the care provided to Mr. Doe by TMH was authorized by Ullicare, the Fund's third-party claims administrator. Aff. of Randall, ¶¶ 16-17; Pl.s' Exs. B8 and B9. The Fund does not deny that Ullicare had either actual or apparent authority to authorize healthcare providers to provide services to eligible Fund participants. In fact, the Fund's SPD lists Ullicare under its heading "important phone numbers" and advises participants that they must contact Ullicare for "pre-certification, continued stay review and second surgical opinion." Participants are required to contact Ullicare within forty-eight hours of any emergency admission, such as Mr. Does' visit to TMH.

Plaintiffs' claims in this matter arise out of actions allegedly undertaken by TMH in reliance upon Plaintiffs' relationship with HVM and the authorization received from Ullicare acting as the

Fund's agent. Applying the prima facie standard, such reliance satisfies the relatedness prong. See Women & Infants Hosp. v. Cmty. Health Network of Connecticut, C.A. No. 04-535ML, 2005 WL 1074376 at 3 (D.R.I. Apr. 28, 2005).

### 2.     Purposeful Availment

The second prong of the due process test considers whether a defendant has "engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable." Id. at 1391 (quoting Rush v. Savchuk, 444 U.S. 320, 329 (1980)). Two factors are considered in the purposeful availment analysis: voluntariness and foreseeability. See Ticketmaster, 26 F.3d at 207. "To demonstrate purposeful availment, the plaintiff must proffer 'evidence that the defendant[s] actually reached out to the plaintiff's state of residence to *create* a relationship – say, by solicitation, – the mere fact that the defendant[s] willingly entered into a tendered relationship does not carry the day.'" PFIP, LLC v. Planet Fitness Enter., Inc., No. 04-250-JD, 2004 WL 2538489, at *7 (D.N.H. Nov. 10, 2004) (quoting Phillips Exeter, 196 F.3d at 292). The requirement "depends upon the extent to which the defendants voluntarily took action that made it foreseeable they might be required to defend themselves in court in [the forum state]." Id. (citing Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 11 (1st Cir. 2002)).

Another element to consider is whether or not the Fund's "participation in the economic life of [Rhode Island]" rose above that of a passive purchaser "who simply place[d] an order and [sat] by until the goods were delivered." WPI Electronics, Inc. v. Super Vision Int'l, Inc., No. C-90-426-B, 2000 WL 1466118, at *6 (D.N.H. Jan. 27, 2000) (citing Whittaker, 482 F.2d at 1084 (citing In-Flight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 220, 232-233 (6th Cir. 1972)). This Court finds that the facts in this case indicated that the Fund acted as more than just a passive purchaser.

Accepting all of these facts in the light most favorable to Plaintiffs as required, the Court finds the Fund acted as an active, rather than passive, purchaser. The Fund actively and voluntarily participated in the economic life of this District by entering into a relationship with HVM and allegedly authorizing it to enter into PPO arrangements with healthcare providers located in this District, such as Plaintiffs, to provide healthcare to its eligible members and retirees in this geographical area. The Fund supports benefits for a regional labor organization with local unions covering each of the six New England states. There is an Iron Workers local union present in Rhode Island, and, thus, it is reasonable to assume that there are many eligible members and retirees living in this District and the general coverage areas of both RIH and TMH. At least since 1998, Fund participants regularly utilized services under the HVM arrangement at both TMH and RIH.

The issue of foreseeability "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Burger King, 471 U.S. at 475. There must be evidence of "a voluntary decision by the defendant to inject itself into the local economy as a market participant." Microfibres, Inc. v. McDevitt-Askew, 20 F. Supp. 2d 316, 321 (D.R.I. 1998). This analysis involves looking at essentially the same facts as the analysis for the purposeful availment prong. Here, the contacts were clearly not "random" or "attenuated." The Fund took an active role in the purchase of discounted healthcare services for its participants through HVM from Rhode Island healthcare providers, even financially incentivizing its eligible members and retirees to utilize PPO providers, such as Plaintiffs, by providing higher levels of coverage than for non-PPO providers. The possibility of having to litigate in a Rhode Island court should not come as a surprise to the Fund

which exists to provide fringe benefits for a large regional labor organization with a significant presence in New England and this District of both active members and retirees.

### 3.     Gestalt Factors

The third prong of the test involves a determination of whether or not the Court's exercise of jurisdiction over Defendant is reasonable. United Elec., 960 F.2d at 1089. In making this determination, the Court must apply the following "Gestalt" factors. See, e.g., World-Wide Volkswagen v. Woodson, 444 U.S. 286, 292 (1980).

#### (a)     Defendant's Appearance

In order for a defendant to show that he is unduly burdened by appearing in the forum state, he must "...demonstrate some kind of special or unusual burden." Pritzker, 42 F.3d at 64. Courts have recognized, however, that it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction. See id. at 64. Thus, absent a showing of an undue burden, mere economic considerations are insufficient. The Fund alleges no special burden. As such, this factor weighs in favor of this Court exercising jurisdiction over the Fund.

#### (b)     Forum State's Interest

In order to determine the forum state's interest in hearing the dispute, this Court should "not...compare [its] interest to that of some other jurisdiction...." Foster, 46 F.3d at 151 (citing Burger King, 471 U.S. at 483 n.26. Accordingly, even though Massachusetts may have some interest in litigating this case, this Court is not called on to weigh the forums' respective interests. Here, Rhode Island does have interest in seeing that a financial dispute involving a major healthcare provider providing emergency treatment to a patient covered by a regional health and welfare plan is resolved in this forum. This factor weighs in favor of exercising jurisdiction over the Fund.

### (c) Plaintiffs' Interest in Relief

This factor clearly weighs in Plaintiffs' favor. The goal is to ensure that a plaintiff is able to obtain "convenient and effective relief." Pritzker, 42 F.3d at 64. Central to this goal is that the court "accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience." Id. (citing Ticketmaster, 26 F.3d at 211. Here, it is readily apparent that Plaintiffs wish to litigate in this forum.

### (d) Judicial System's Interests

The focus of this factor is on the "judicial system's interest in obtaining the most effective resolution of the controversy." Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 718. Even though some of the potential witnesses may be located in Massachusetts – which would weigh in favor of litigation in that forum – it appears that the majority of the potential witnesses and records are likely located in Rhode Island. Accordingly, this factor tips in Plaintiffs' favor.

### (e) States' Common Interest

The last Gestalt factor "addresses the interests of the affected governments in substantive social policies." Id. at 719. In considering this factor, "the most prominent policy implicated is the ability of a state to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors." Sawtelle, 70 F.3d at 1395 (quoting Burger King, 471 U.S. at 473). Rhode Island does have an interest in ensuring that its resident healthcare providers receive fair and reasonable compensation for healthcare services rendered to patients covered by out-of-state medical insurers. Accordingly, this factor weighs in favor of this Court exercising jurisdiction over the Fund.

None of the Gestalt factors weigh heavily enough in the Fund's favor to suggest to this Court that they outweigh the analysis with regard to the first two prongs of the jurisdictional test. On the whole, the Gestalt factors support the exercise of personal jurisdiction over the Fund.

### Conclusion

For the reasons discussed above, this Court finds that all prongs of the three-factor test for specific personal jurisdiction are satisfied and that this Court may properly exercise personal jurisdiction over the Fund. Accordingly, I recommend that Defendant's Motion to Dismiss (Document No. 6) pursuant to Rule 12(b)(2) for lack of personal jurisdiction be DENIED. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); D.R.I. Local R. 32. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond

LINCOLN D. ALMOND
United States Magistrate Judge
September 30, 2005