**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LIFESPAN PHYSICIANS PROFESSIONAL SERVICE ORGANIZATION and THE MIRIAM HOSPITAL** *Plaintiffs* | : | |
| **VS.** | : | **C.A. NO. 05-239S** |
| **HEALTHCARE VALUE MANAGEMENT, INC. and IRON WORKERS DISTRICT COUNCIL OF NEW ENGLAND WELFARE FUND** *Defendants* | : | |

**DEFENDANT HEALTHCARE VALUE MANAGEMENT, INC.'S RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Now comes Defendant, Healthcare Value Management, Inc., by its attorney and responds to Plaintiff's First Set of Requests for Production of Documents.

**GENERAL OBJECTIONS**

Defendant hereby incorporates the following general objections into each and every specific objection stated below and to each and every response provided hereafter as if such general objections were set forth therein in full.

1. Defendant objects in whole or in part to each and every request for documents to the extent that it calls for disclosure of information from persons or entities other than this Defendant.

2. Defendant objects in whole or in part to each and every request for documents to the extent that it is vague, ambiguous or of uncertain meaning. Defendant further objects in whole or in part to each and every request for documents to the extent that it does not identify documents, subject, and time frames with sufficient particularity to permit a reasonable response.

3. Defendant objects in whole or in part to each and every request for documents to the extent that it requires Defendant to provide information or documents not in his possession, custody or control.

4. Defendant objects in whole or in part to each and every request for documents to the extent that it is neither relevant to the subject matter of the instant litigation, nor reasonably calculated to lead to the discovery of admissible evidence.

5. Defendant objects in whole or in part to each and every request for documents to the extent that it is overly broad, oppressive, unduly burdensome, expansive or beyond the permissible scope of discovery under the Federal Rules of Civil Procedure.

6. Defendant objects in whole or in part to each and every request for documents to the extent that it is not subject to reasonable limitation in time or scope.

7. Defendant objects in whole or in part to each and every request for documents to the extent that it purports to require disclosure of any information or document, or otherwise request information of documents, obtain or prepared for, or in anticipation of litigation or for trial, constitutes attorney work product, is made confidential by law, reveals the substance of communications protected from disclosure by the attorney/client privilege or is otherwise privileged from disclosure pursuant to the Federal Rules of Civil Procedure. Any inadvertent production of such documents or disclosure of such information shall not be deemed a waiver of any confidence, privilege or of the work product doctrine.

8. Defendant objects in whole or in part to each and every request for documents to the extent that it seeks information or documents that contain confidential information which would impinge on the constitutionally protected right to privacy of individuals. Any inadvertent

production of such documents or disclosure of such information shall not be deemed a waiver of any confidence or privilege.

9. In responding to each request for documents, Defendant does not concede the relevancy, materiality or admissibility of the response. Defendant's response to each request for documents is made subject to, without waiving or intending to waive, any objection to the confidentiality, relevancy, materiality privilege or admissibility as evidence for any purpose of any of the responses given herein.

10. Defendant reserves all objections as to the admissibility at trial of any information provided. All information provided by Defendant is for use in this litigation only and for no other purpose.

11. These general objections will be deemed to be continuing throughout the responses which follow, whether or not expressly referred to therein. The stating of additional or other specific objections below shall not constitute a waiver of these general objections. Defendant's objections to Plaintiffs' request are made without waiver of, or prejudice to, any additional objections Defendant may make. All such objections are hereby expressly preserved, as is the right to move for a protective order.

**RESPONSES**

**Request No. 1:** All documents that you intend to use at trial in this matter.

**Response No. 1:** Objection to this request inasmuch as it seeks information which invades and violates defense counsel's litigation strategy, attorney/client privilege and work product doctrine. Without waiving said objection, Defendant responds that it has not yet determined what documents it intends to introduce at the trial of this matter.

**<u>Request No. 2</u>:** Any and all documents that refer or relate to any agreement between Plaintiffs and Defendants for the provision of service by the PSO and/or TMH to members.

**<u>Response No. 2</u>:** See attached agreement between HealthCare VALUE Management, Inc. and Lifespan/Physicians, Professional Services Organization, Inc.

**<u>Request No. 3</u>:** Any and all documents which were used or relied upon to answer the Interrogatories propounded herewith.

**<u>Response No. 3</u>:** See attached agreement between HealthCare VALUE Management, Inc. and Union Labor Life Insurance Company; Agreement between HealthCare VALUE Management, Inc. and Lifespan/Physicians, Professional Services Organization, Inc.

**<u>Request No. 4</u>:** All documents which support your refusal to pay for services rendered to John Doe at TMH from November 13, 2003 to November 27, 2003.

**<u>Response No. 4</u>:** See attached Article II of the Agreement between HealthCare VALUE Management, Inc. and Union Labor Life Insurance Company; Section 1.2 PAYMENT of the agreement between HCVM and Lifespan/Physicians, Professional Services Organization, Inc; unsigned copy of Amendment to the Agreement between HealthCare VALUE Management, Inc. and Iron Clad Insurance Company effective April 1, 2003; unsigned copy of Agreement Between HealthCare VALUE Management, Inc. and Iron Workers Local 7 effective February 1, 1991.

**<u>Request No. 5</u>:** All documents, including notes, diaries or logs, maintained or created by you pertaining to the events at issue in this litigation.

**<u>Response No. 5</u>:** Objection to the extent that calls for documents are protected by attorney/client or work product privilege. Without waiving said objection, no such documents exist.

**<u>Request No. 6</u>:** Any and all documents evidencing communications between Plaintiffs and the Defendants.

**Response No. 6**: See attached agreement between HealthCare VALUE Management, Inc. and Lifespan/Physicians, Professional Services Organization, Inc.; documents are already in Plaintiff's possession in that they were produced in Plaintiff's Objection to defendant's Motion to Dismiss.

**Request No. 7**: Any and all documents evidencing communications between HCVM and Iron Clad and/or Ironworkers District Council regarding John Doe and/or the services rendered to John Doe by TMH.

**Response No. 7**: None at this time; investigation continues.

**Request No. 8**: Any and all documents evidencing communications between HCVM and any other person or entity concerning John Doe and/or the services rendered to John Doe by TMH.

**Response No. 8**: See attached letter dated April 4, 2004 from Judy Randall at PSO to Sandy Saleeba at HCVM; printout from Plaintiff's patient account history showing calls made to Sandy Saleeba at HCVM.

**Request No. 9**: Any and all agreements, contracts, correspondence, email correspondence and/or any other documents between HCVM and Iron Workers District Council and/or Iron Clad regarding services, payment, treatment and/or eligibility of Iron Workers members to services provided by PSO and/or TMH.

**Response No. 9**: See attached agreement between HealthCare VALUE Management, Inc. and Union Labor Life Insurance Company, which contains standard client contract language and at one time governed the relationship between HCVM and Iron Workers District Counsel of New England; unsigned Amendment to the Agreement Between HealthCare VALUE Management, Inc. and Iron Clad Insurance Company; unsigned Agreement Between HCVM and Iron Workers Local 7.

**Request No. 10**: Any and all documents referred to or which support any of the Affirmative Defenses raised in your Answer to Plaintiffs' Complaint.

<u>**Response No. 10**</u>: See attached agreement between HealthCare VALUE Management, Inc. and Lifespan/Physicians, Professional Services Organization, Inc.; computer printout from HCVM claims system showing claim was priced at contract rate of 75% of billed charges.

<u>**Request No. 11**</u>: Any and all expert reports prepared by any expert consulted and/or retained in this matter, including any documents reviewed by such experts.

<u>**Response No. 11**</u>: None at this time.

<u>**Request No. 12**</u>: Any and all curriculum vitae of each expert consulted and/or retained concerning this litigation.

<u>**Response No. 12**</u>: None at this time.

<u>**Request No. 13**</u>: Any and all documents in Defendant's possession referring or relating to calculations of amounts owed by Defendants to Plaintiffs for services rendered to John Doe.

<u>**Response No. 13**</u>: Computer printout from HCVM claims system, which shows claim priced at 75% of billed charges.

<u>**Request No. 14**</u>: Any and all documents that substantiate your denial of Paragraph 15 of the Complaint.

<u>**Response No. 14**</u>: Affidavit of Judy Randall at Lifespan; Plaintiff's printout of account history, entry dated December 29, 2003.

<u>**Request No. 15**</u>: Any and all documents that substantiate your denial of Paragraph 17 of the Complaint.

<u>**Response No. 15**</u>: See attached Plaintiff's printout of account history, entry dated January 19, 2004.

**Request No. 16**: Any and all documents that substantiate your denial of Paragraph 18 of the Complaint.

**Response No. 16**: See attached Plaintiff's printout of account history.

**Request No. 17**: Any and all documents that substantiate your denial of Paragraph 19 of the Complaint.

**Response No. 17**: April 8, 2004 letter is not a request for payment, but rather a request for assistance in getting the bill paid by co-defendant.

**Request No. 18**: Any and all documents that substantiate your denial of Paragraph 22 of the Complaint.

**Response No. 18**: No such correspondence exists directed to HCVM demanding payment.

**Request No. 19**: Any and all documents that substantiate your denial of Paragraph 25 of the Complaint.

**Response No. 19**: None at this time; investigation continues.

**Request No. 20**: Any and all documents that substantiate your denial of Paragraph 32 of the Complaint.

**Response No. 20**: See attached letter from Ullicare dated November 14, 2003 approving treatment; Plaintiff's printout of account history showing they spoke with Ullicare for approval of treatment, entry dated December 29, 2003.

**Request No. 21**: Any and all documents that substantiate your denial of Paragraph 34 of the Complaint.

**Response No. 21**: Section 1.2 PAYMENT of the agreement between HCVM and Lifespan/Physicians, Professional Services Organization, Inc.; Article II of the Agreement between HealthCare VALUE Management, Inc. and Union Labor Life Insurance Company

**Request No. 22:** Any and all documents that substantiate your denial of Paragraph 35 of the Complaint.

**Response No. 22:** See attached correspondence dated May 25, 2004 from Anne Fini at Iron Clad to Judy Randall at Lifespan showing checks paid to Miriam Hospital by Iron Clad.

**Request No. 23:** Any and all documents that substantiate your denial of Paragraph 37 of the Complaint.

**Response No. 23:** Section 1.2 PAYMENT of the agreement between HCVM and Lifespan/Physicians, Professional Services Organization, Inc.; Article II of the Agreement between HealthCare VALUE Management, Inc. and Union Labor Life Insurance Company which shows HCVM is under no obligation to pay for services rendered to co-defendant's members.

Defendant,
Healthcare Value Management, Inc.
By Its Attorney

Matthew T. Oliverio, Esquire (#3372)
OLIVERIO & MARCACCIO, LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax

Dated: December 9, 2005

**CERTIFICATION**

I hereby certify that a true copy of the foregoing *DEFENDANT HEALTHCARE VALUE MANAGEMENT, INC.'S RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS* was mailed, postage prepaid, to Linn Fr. Freedman, Esquire, NIXON PEABODY, LLP., One Citizens Plaza, Suite 500, Providence, RI 02903 and Michael J. Lepizzera Jr., Esquire, LEPIZZERA LAPROCINA Counsellors at Law, 301 Metro Center Blvd., Suite 102, Warwick, RI 02886 on the 9th day of December, 2005.

# Agreement Between

# HealthCare VALUE Management, Inc.
and
# Union Labor Life Insurance Company
(Braintree, MA Regional Staff Only)

# TABLE OF CONTENTS


| | | |
|---|---|---|
| ARTICLE I : | HCVM REQUIREMENTS | 2 |
| ARTICLE II : | PAYOR REQUIREMENTS | 3 |
| ARTICLE III : | PAYMENT | 4 |
| ARTICLE IV : | GENERAL TERMS AND CONDITIONS | 5 |

| | |
|---|---|
| EXHIBIT I : | PLAN DESIGN & ADMINISTRATIVE REQUIREMENTS |
| EXHIBIT II | MEDICAL ID CARD DRAFT |
| EXHIBIT III | GRIEVANCE FORM |

This Agreement made effective as of the first day of July, 1999 between HealthCare VALUE Management, Inc.,("HCVM") a Corporation organized under the Laws of the Commonwealth of Massachusetts and Union Labor Life Insurance Company ("Payor") under the Laws of the State of Maryland.

**WITNESSETH:**

WHEREAS, HCVM wishes to contract with certain Payors and its Clients to provide quality services to its Preferred Provider Network members in an efficient and cost effective manner;

WHEREAS, the Payor wishes to provide its eligible employees and staff located in the Braintree, MA regional office with the use of a Preferred Provider Network of Hospitals, Physicians and other services;

WHEREAS, the terms and conditions contained herein apply exclusively within the New England service area, as defined, and are not intended to affect relationships or agreements outside of the defined service area;

WHEREAS, the terms and conditions contained herein apply only to the eligible employees and staff located in the Braintree, MA regional office of the Payor that have chosen to integrate the Preferred Provider Network into its Benefit Plan;

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the Payor and HCVM hereby agree as follows:

## ARTICLE I

## HCVM REQUIREMENTS

**1.1 DISCOUNTS.** HCVM will provide the Payor with discounts it has negotiated with participating Network providers.

**1.2 PROVIDER CONTRACTS.** HCVM will have a contract with each hospital, physician/physician group and other ancillary providers. The providers will be asked to continue to cooperate with the utilization review programs, to provide free audits of bills, to assist the payor with patient referrals and to apply the discounts to any co-payments that may be required at Network hospitals for Clients of the Payor.

**1.3 TERM OF PROVIDER CONTRACT.** HCVM has requested that each provider agree to a two year term for the Network Contract. HCVM will work to limit the increase in hospital charges to no more than the increase in the medical component of the Consumer Price Index.

**1.4 REPRICING PROCEDURES FOR PARTICIPATING HOSPITAL CLAIMS.** It is understood that HCVM will receive all participating Network hospital claims and will stamp all such claims indicating the appropriate amount of reimbursement pursuant to HCVM's financial contracts with the Network hospitals.

**1.5 REPRICING PROCEDURES FOR PARTICIPATING PHYSICIAN CLAIMS.** It is understood that Payor wishes to reprice all non-hospital bills. HCVM will provide the Payor with procedure codes, descriptions, and fee schedules for Network physician charges upon mutual signature of this Agreement, and as often as said rates change.

## ARTICLE II

## PAYOR REQUIREMENTS

**2.1 PROMPT PAYMENT.** Payor agrees to promptly reimburse participating Network providers within thirty (30) business days from their receipt of the claim. Payor hereby agrees that claims not reimbursed within thirty (30) days are payable at the full original billed amount and will not be eligible for the HCVM discount if so requested by the participating provider.

**2.1.1 PROVIDER REIMBURSEMENT.** The HCVM Fee Schedule will be considered as payment in full to the participating provider less any applicable copay amounts, deductible, coinsurances or other out of pocket expenses as defined within the benefit plan design previously approved by HCVM. The HCVM Fee Schedule is considered primary and final and is not subject to any further reduction or review of usual and customary standards or regional comparisons.

**2.1.2 EMPLOYER FUNDING.** Payor hereby agrees to inform and educate its client employers as to the responsibility and necessity of funding claims on a timely basis and the potential risk of losing the savings generated by prompt claim reimbursement.

**2.1.3 MEDICAL REVIEW.** If claim reimbursement is delayed due to investigation for: pre existing condition, medical review or stop loss beyond a thirty (30) day period Payor and/or its stop loss carrier or reinsuring carrier agrees to forfeit the savings and any discount that would normally be applied to the charge reimbursing the provider at the full and originally billed charge. Any additional consideration will be at the discretion of the participating provider. Any necessary correspondence will be forwarded directly to the provider with a copy to HCVM.

**2.2 HOSPITAL CLAIMS.** The hospitals will send bills directly to HCVM. HCVM will certify the discounts, reprice the bill, and forward the repriced bills to the Payor. Payor agrees not to process bills inadvertently sent directly to them by a Network hospital but to redirect them back to HCVM for certification.

**2.3 PLAN DESIGN INCENTIVES.** Participating HCVM Network providers expect increased volume due to the results of benefit plan design financial incentives. Payor hereby agrees to educate its employer clients regarding Network requirements and will promote maximum use of Network providers through the development and implementation of plan design financial incentives and increased benefits.

**Payor warrants that each Employer, Plan Sponsor or Health Plan shall:**

- Waive plan year deductibles for Network physician office visits.
- Payor agrees to reimburse Network physicians at 100% of the HCVM Fee Schedule less an office co-payment, the amount of which can be chosen by the Payor and its Clients.
- Any deductible used for out of Network benefits will be significantly greater than the value of those used for non physician services in the Network.
- The amount of the physician co-payment will be stated on the patient ID card.
- Create a minimum 20% co-insurance differential between in and out of network benefit levels. Any other alternatives or options will be presented and approved prior to new group or renewal implementation.

**2.4 NETWORK DIRECTORIES.** The cost of HCVM Network Directories is not included in the monthly access fee. HCVM does require that the Payor distribute the Directory at least once per year to its members. For those Payors choosing to print Directories, HCVM will supply a camera ready draft of the Directory or the Payor may order the appropriate number of copies directly from the HCVM printer at cost. If the Payor chooses to service the client through telephonic support, HCVM will provide a monthly computer disk which reflects current provider status.

**2.5 ADMINISTRATION** Payor agrees to modify its ID card to include:

- The Payor name or logo in the top left corner of the ID card and the HCVM logo in the top right corner of the ID card
- Co-pay amount to be collected at the provider office
- Instructions for the direction of claims
- Payor agrees to include a statement on the Explanation of Benefits that informs the patient and provider that the payment is due to the HCVM contractual agreement. This statement must include the name or initials of HCVM.
- Instructions to providers to note the name of the "PAYOR" in section 11C of the HCFA 1500 or in section 50 of the UB 92/93

## ARTICLE III

## PAYMENT

**3.1 START UP FEE.** There is a one time Start-Up fee of $ 1.50 per participating employee for those members residing in areas where there are Network providers.

**3.2 NETWORK ACCESS FEE.** The base fee for network use will be $ 3.00 per participating employee per month for those living in areas where there are Network providers. Payor agrees to include a client summary with payment of the monthly access fee which details the employer name, group number, and number of employees.

**3.3 ACCESS FEE RENEWAL.** The amount of the access fee shall be subject to adjustment by HCVM upon the anniversary date of this Agreement. HCVM will provide the Payor with (30) days prior written notice.

## ARTICLE IV

## GENERAL TERMS AND CONDITIONS

**4.1 TERM OF THIS CONTRACT.** This contract will be in effect for one year from the date both parties have signed. This contract will automatically renew in consecutive one year terms until such a time as notification is provided by either or both parties. This contract may be terminated immediately if both parties agree. This contract may be terminated by either party provided 60 days written notice.

**4.2 USE OF NAME.** HCVM will have the right to use the name of the Payor for purposes of marketing, informing hospitals and prospective clients of the identity of the members of the HCVM Network and otherwise to carry out the terms of this Agreement during the period this Agreement remains in effect.

**4.3 EXCLUSIVITY AND OTHER PPNS.** Payor agrees to contract exclusively with HCVM within its service area of: **Massachusetts, Rhode Island, New Hampshire, Connecticut, Maine and Vermont** for discounts provided by HCVM for the term of this contract. Payor agrees to offer the HCVM Network as its preferred Network of choice. Payor will implement the HCVM Network for all new business effective after the signing of this Agreement. HCVM will be offered and presented to all existing Clients who may be accessing other networks within the HCVM service area at the time of renewal.

4.4 **DISCOUNTS WITH NON-PPN HOSPITALS.** Payor agrees not to obtain discounts from non-PPN hospitals. Any discounts obtained prior to this agreement are not affected.

4.5 **INSURANCE AND INDEMNIFICATION.** The Payor, at its sole cost and expense, will procure and maintain for the term of this Agreement such policies of comprehensive general liability, professional liability and other insurance as may be necessary to insure the Payor against any claim or claims for damages arising out of actions of the Payor. The Payor will indemnify and hold HCVM harmless from any and all liability, loss, claims, demands, or expense, including attorneys' fees, caused by the negligent or intentional acts or omissions of the Payor, its agents, Staff, or employees in carrying out their responsibilities under this Agreement. Upon prompt notice from HCVM, the Payor will resist and defend at its own expense such action or proceeding.

4.6 **HCVM INDEMNIFICATION.** HCVM at its sole cost and expense will procure and maintain for the term of this Agreement such policies of comprehensive general liability, professional liability and other insurance as may be necessary to insure HCVM against any claim or claims for damages arising out of actions of HCVM. HCVM will indemnify and hold the Payor harmless from any and liability, loss, claims, demands, or expense, including attorneys' fees, caused by the negligent or intentional acts or omissions of HCVM, its agents, staff, or employees in carrying out their responsibilities under this Agreement. Upon prompt notice from the Payor, HCVM will resist and defend at its own expense such actions or proceeding.

4.7 **ASSIGNMENT.** No assignment of the rights, duties, or obligations of this Agreement shall be made by HCVM or the Payor without the consent of the other party.

4.8 **COUNTERPARTS.** This Agreement may be executed in any number of counterparts and amendments, which, read together, shall constitute one instrument.

4.9 **CORRESPONDENCE.** Notice required to be given pursuant to the terms and provisions hereof shall be delivered by hand or shall be in writing and shall be sent by certified or registered mail, return receipt requested, to HCVM at:

<u>HealthCare VALUE Management, Inc.</u>
100 River Ridge Drive
Norwood, Massachusetts 02062

**Union Labor Life Insurance Company**
161 Forbes Road, Suite 204
Braintree, MA 02184

4.10 **INDEPENDENT CONTRACTORS.** Nothing herein is intended to create nor shall be deemed or construed to create any relationship between the parties hereto other than that of independent contractors. Neither of the parties hereto shall be construed to be the agent, employee, partner, co-venturer or owner of the other.

4.11 **GOVERNING LAW.** The validity of this Agreement and any of the items and provisions contained within shall be interpreted and governed in accordance with the laws of the Commonwealth of Massachusetts.

4.12 **GRIEVANCE PROCEDURES.** Payor and/or its client/employer/patient may submit the form illustrated within Exhibit IV to initiate a complaint or grievance against a participating provider or issue related to the Network. HCVM and Payor agree to negotiate in good faith and in a timely manner to attempt to resolve any problems, complaints or grievances that are brought to either party's attention as a result of and in accordance with the terms of this Agreement.

Payor has reviewed, and agrees to the terms as outlined in the Implementation Worksheet.

________yes ________no

Access Fee per member per month based on service area and repricing: __________

Hereby Agreed and Signed by:

**HealthCare VALUE Management, Inc.**

Gregory Bulger
Chief Executive Officer

Charles Donahue, Jr.
President

Date: 1/27/2000

**Union Labor Life Insurance Company**

Title: V.P. Human Resources

Title: Director, Corporate Benefits

Date: January 19, 2000

# EXHIBIT V

# GROUP ENROLLMENT/TERMINATION FORM

# EXHIBIT I

## HCVM PLAN DESIGN AND ADMINISTRATIVE REQUIREMENTS

**PLAN DESIGN INCENTIVES.**

Participating HCVM Network providers expect increased volume due to the results of benefit plan design financial incentives. Payor hereby agrees to educate its employer clients regarding Network requirements and will promote maximum use of Network providers through the development and implementation of plan design financial incentives and increased benefits.

**Each Employer, Plan Sponsor or Health Plan shall:**

- No gatekeeper, referral, or point of service plan designs or models will be permitted to use the HCVM PPO Network anywhere in the New England service area.
- Waive plan year deductibles for Network physician office visits. Only a co-pay of a fixed amount, as an example $5. $10, $15, may be applied to any outpatient office visits for any participating physician.
- Payor agrees to reimburse Network physicians at 100% of the HCVM Fee Schedule less an office co-payment, the amount of which can be chosen by the Payor and its Clients.
- Any deductible used for out of Network benefits will be significantly greater than the value of those used for non physician services in the Network.
- The amount of the physician co-payment will be stated on the patient ID card.
- Create a minimum 20% co-insurance differential between in and out of network benefit levels.
- Any other alternatives or options will be presented and approved prior to new group or renewal implementation.

**ADMINISTRATION.**

Each ID card will include:

- Payor name or logo in the top left corner of the ID card and the HCVM logo in the top right corner of the ID card.
- Co-pay amount to be collected at the provider office
- Instructions for the direction of claims
- A statement on the Explanation of Benefits will be included that informs the patient and provider that the payment is due to the HCVM contractual agreement. This statement must include the name or initials of HCVM for provider identification.
- Instructions to providers to note the name of the "PAYOR" in section 11C of the HCFA 1500 or in section 50 of the UB 92/93

**PROMPT PAYMENT.**

The Claim Payor will promptly reimburse participating Network providers within thirty (30) business days from their receipt of the claim.

Claims not reimbursed within 30 days are payable at the full original billed amount and will not be eligible for the HCVM discount if so requested by the participating provider.

**EMPLOYER FUNDING-SELF FUNDED ACCOUNTS.**

All self funded employer accounts will be informed and educated as to the responsibility and necessity of funding claims on a timely basis (within 30 days) and the potential risk of losing the savings generated by prompt claim reimbursement.

If the benefit plan and claim reserve account are not funded properly the Payor, HCVM and providers to whom monies are owed, will be notified immediately of the lack of funding. Pending claims, and the possible loss of savings, will be evaluated at that time.

**MEDICAL REVIEW.**

If hospital claim reimbursement is delayed due to investigation for:

- pre existing condition
- medical review
- stop loss

beyond a thirty (30) day period Payor and/or its stop loss carrier or reinsuring carrier agrees to forfeit the savings and any discount that would normally be applied to the charge reimbursing the provider at the full and originally billed charge. Any additional consideration will be at the discretion of the participating provider. Any necessary correspondence will be forwarded directly to the provider with a copy to HCVM.

# EXHIBIT II

## PAYOR CERTIFICATION AND LICENSURE

**Payor will submit the following or an equivalent:**

- Annual report
- Resume / biography of ownership if privately held
- Auditors report of financial status
- Certificate of Good Standing
- Professional certification and licensure for each state, where mandated, in which payor is doing business
- Copy of Errors & Omissions insurance cover sheet
- Verification of membership with either SPBA or SIAA

# EXHIBIT III

## Medical ID Card Draft

# EXHIBIT IV

# HCVM

## Grievance & Appeal Record

**Initiated by Provider if the provider disagrees with a PPO treatment or reimbursement decision.**

HCVM does not recommend or offer any type of opinion in reference to treatment as the Network does not include a Utilization Review component. Any questions pertaining to treatments are referred to the payor and/or the Utilization Review company.

Occasionally a provider will contact HCVM regarding a late reimbursement. HCVM is able to troubleshoot the situation by contacting a payor and obtaining an explanation for the delay, ie: subrogation, cash flow, etc. HCVM has an excellent relationship with its payors and asks that they contact the provider directly if a reimbursement delay is expected.

Documentation regarding a claim problem and other appeals are filed in the appropriate payor/ client file.

**Initiated by a dissatisfied employee or member.**

All appeals are referred to the individual client payor and would then be subject to their specific grievance procedures and protocols. However, if the appeal and grievance is initiated with HCVM staff, the record will be forwarded to the appropriate party for continuance and resolution.

All appropriate documentation will be attached and filed with the grievance.

# HealthCare VALUE Management
## Grievance and Appeal Record

### Member Information

Member Name: ______________________
Member Address: ______________________
______________________
Member Phone: ______________________

### Provider Information

Provider Name: ______________________
Provider Address: ______________________
______________________
Provider Phone #: ______________________

### Employer/Payor Information

Employer Name: ______________________
Employer Address: ______________________
______________________
Payor Contact Name: ______________________
Payor Phone/Fax: ______________________

## Type of Grievance

Clinical: ______________ Administrative: ______________

### Statement of Grievance (Attach Additional Supporting Details, Letters, Records, etc.)

______________________

## Complaint Considered For Action

Justified: ______________ Unjustified: ______________

# Heal_Care VALUE Managen_ıt
## Grievance and Appeal Record

### Member Information

Member Name: ______________________
Member Address: ______________________
______________________
Member Phone: ______________________

### Provider Information

Provider Name: ______________________
Provider Address: ______________________
______________________
Provider Phone #: ______________________

### Employer/Payor Information

Employer Name: ______________________
Employer Address: ______________________
______________________
Payor Contact Name: ______________________
Payor Phone/Fax: ______________________

## Type of Grievance

Clinical: ______________ Administrative: ______________

### Statement of Grievance (Attach Additional Supporting Details, Letters, Records, etc.)

______________________

## Complaint Considered For Action

Justified: ______________ Unjustified: ______________

# AMENDMENT TO THE AGREEMENT

# BETWEEN HEALTHCARE VALUE MANAGEMENT, INC. AND

# IRON CLAD INSURANCE COMPANY

THIS AMENDMENT to the Agreement including any amendments thereto (collectively the "Agreement") is by and among HealthCare VALUE Management, Inc. ("HCVM), CCN Managed Care, Inc. ("CCN") and Iron Clad Insurance Company ("Payer"). This Amendment is effective as of April 1, 2003.

## RECITALS

A. HCVM was recently acquired by First Health Group Corp.;

B. First Health Group Corp. has also acquired CCN;

C. Payer desires to utilize some of the services offered by CCN;

D. CCN is willing to provide such services on the terms and conditions set forth herein.

The parties above agree to the following modifications to the Agreement:

1. The attached GS02 is hereby incorporated into the Agreement and made a part thereby.

2. The attached GS02 Remote Repricing Addendum is hereby incorporated into the Agreement and made a part thereby.

3. The term "Payer" shall be used interchangeably with "Payor" as such term is used on any attachments hereto.

3. Notwithstanding anything to the contrary in the Agreement, CCN will provide the services specified in the attached Addenda in accordance with its then-current policies and procedures, and Payer agrees to comply with such policies and procedures.

4. The parties acknowledge that CCN is a party to the Agreement only with respect to the services performed by CCN in the Addenda attached to this Amendment.

5. Notwithstanding any other provision in the Agreement to the contrary, should CCN incur any costs, expenses, judgments, damages, liabilities, legal fees, or other reasonable costs of litigation or defense of any claim, including reasonable attorneys' fees and costs (collectively, "Costs or Liabilities"), whether in settlement of any cause of action or threatened cause of

action, which settlement Payer approves, or as a result of an order or judgment of a court of competent jurisdiction, which Costs or Liabilities do not result or arise from any negligence or intentional act of misconduct of CCN, Payer agrees to indemnify, hold harmless and reimburse CCN to the extent such Costs or Liabilities result or arise from the negligence or intentional act of misconduct of Payer.

6. The above Recitals are incorporated herein as if fully set forth.

Except as so amended, all other terms and conditions of the Agreement shall remain in full force and effect. In case of a conflict between the terms of the Agreement and the terms of this Amendment, the terms of this Amendment will control.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment by their duly authorized officers.

| CCN Managed Care, Inc. | Iron Clad Insurance Company |
| --- | --- |
| Signature__________________________ | Signature__________________________ |
| Printed Name__________________________ | Printed Name__________________________ |
| Title__________________________ | Title__________________________ |
| Date __________________________ | Date__________________________ |

HealthCare VALUE Management, Inc.

Signature__________________________

Printed
Name__________________________

Title__________________________

Date __________________________

**Client Name: Iron Clad Insurance Company**

**Group Health**
**Addendum GS2**
**CCN Network Access**
**For Leased/Semi-Leased Clients**

This Addendum is intended to define the additional terms and conditions under which Payor shall contract for and CCN shall provide access to the CCN Network (where the Payor or its designee will re-price their own bills according to the CCN Contract Rates) and shall become effective April 1, 2003.

## 1. Definitions

1.0 All definitions set forth in the CCN PAYOR BASE AGREEMENT are incorporated herein by reference in this addendum.

1.1 "Affiliated Entity" is an independent contractor with which CCN contracts for access to Preferred Provider networks or other health care services.

1.2 "Administrative Manual" shall mean the Administrative Procedures and Policies for Payors, a copy of which will be provided to the Payor upon execution of this Agreement and which is incorporated herein by this reference insofar as it pertains to the CCN Services specified in this Agreement and Payor's responsibilities with respect thereto.

1.3 "CCN Affiliated Health Plan" is the plan, program or policy offered, sponsored, administered or insured by Payor to provide coverage for health care services or benefits to a Covered Member. This includes a plan, program or policy designed to provide coverage for health care services provided through a group health, workers' compensation, international travelers, managed auto, disability management, or other managed health care arrangement.

1.4 "CCN Network" shall mean the network of all Facilities and Professional Providers with which CCN or an Affiliated Entity has entered into a Provider Contract.

1.5 "CCN Network Provider" shall mean a physician or other health care practitioner or health care service provider who has agreed to provide Covered Services to Covered Members through the CCN Network.

1.6 "CCN Facility" shall mean a facility that has agreed to provide Covered Services to Covered Members.

1.7 "CCN Contract Rates" are the CCN Facility and CCN Network Provider rates, rate structures and pricing methodologies released by CCN to Payor for the purposes of Re-Pricing.

1.8 "Covered Services" shall mean those health care services for injuries, illnesses or conditions, if any, which CCN Providers shall be obligated to provide for Covered Members pursuant to this Agreement.

1.9 "Leased Client" is a Payor or its designee to which CCN has delegated Re-Pricing for bills submitted by a CCN Facility or CCN Network Provider.

1.10 "Provider Contract" shall mean a contract between CCN and a CCN Network Provider or CCN Facility for the provision of Covered Services to Covered Members.

1.11 "Re-Pricing" is the calculation and application of the CCN Contract Rates to claims submitted by a CCN Facility or CCN Network Provider for health care services provided to a Covered Member in order to determine the reimbursement amounts to be paid for such services.

1.12 "Service Area" refers to the state(s) in which Payor is contracted to use CCN Networks.

1.13 "Semi-Leased Client" is a Payor or its designee to which CCN has delegated Re-Pricing for bills submitted by a CCN Network Provider.

## 2. Covenants of CCN

2.1 Distribution of CCN Contract Rates. On a monthly basis, CCN will distribute the rates for each CCN Facility and/or CCN Network Provider to Payor's designated contact. Such rates shall be furnished in CCN's standard format, unless an alternative format and the associated fees have been mutually agreed upon.

2.2 No Billing of Covered Members. CCN shall contractually prohibit members of the CCN Network from billing Covered Members directly for Covered Services provided to such Covered Members.

2.3 Use of Independent Contractors. Some services offered by CCN are rendered by independent contractors, which includes Affiliated Entities. CCN shall use its best efforts to maintain the availability of these services throughout the course of this Agreement.

2.4 Withdrawal of Independent Contractors. In the event that any independent contractor terminates its relationship with CCN, loses its applicable license or powers to perform its service contract with CCN, or ceases to do business in the Service Area, that service provided by such independent contractor shall be deleted from this Addendum immediately upon any such event, and the CCN administrative fee applicable to such services as set out in this Agreement shall not be due from Payor from the date of that event.

2.5 Bankruptcy of Independent Contractors. In the case that an independent contractor files for bankruptcy under the laws of the United States, Payor shall not be relieved of its obligations to pay CCN for the services provided under this Agreement until such time as CCN is relieved of its obligations to the independent contractor by a Federal Bankruptcy Court having jurisdiction over the matter. Upon discharge of CCN by such court, that service shall be deleted from this Agreement immediately, and the CCN administrative fee applicable to such service as set out in this Agreement, shall not be due from a Payor from the date of that event.

2.6 Replacement of Independent Contractors. CCN shall apply all reasonable efforts to find a replacement independent contractor of comparable cost, quality and availability prior to any termination of an independent contractors' relationship with CCN. CCN shall have up to ninety (90) calendar days after such a termination in which to offer Payor the same service by a different independent contractor, which Payor shall have the option of accepting or rejecting at the same contract price. CCN is not, however, obligated to replace any service after such termination.

2.7 Complaints and Grievance Process. CCN shall maintain a formal complaint and grievance process in accordance with applicable statute and regulation.

2.8 Quality Improvement. CCN shall maintain a quality improvement program in accordance with state rules and regulations.

2.9 Credentialing. CCN shall be responsible for maintaining a provider credentialing program. At CCN's option, CCN may delegate credentialing to another entity. CCN shall provide Payor a summary of CCN's credentialing plan, including it's credentialing and recredentialing standards, upon written request by Payor.

2.10 Nominations. Upon receipt of a documented request from the Payor or Covered Member, CCN shall use its best efforts to add to existing networks those providers, which Payor or Covered Member desires to be part of the CCN Network, in accordance with CCN's network development and credentialing criteria. CCN may

require a period of thirty (30) business days to obtain the completed applications from a targeted provider and an additional ninety (90) business days in which to add the targeted providers.

## 3. Covenants of Payor

3.1 Determination of Qualification. Payor agrees to fully cooperate with CCN in order to determine whether Payor meets CCN's qualifying criteria to receive CCN's Contract Rates for CCN Facilities and/or CCN Network Providers.

3.2 Confidentiality. During the term of this Attachment and for a period of two years after the termination of this Attachment, Payor may not utilize CCN Leased Facility/Professional Provider Contract Rate information to (i) establish or assist in the establishment of its own preferred provider organization network or similar arrangement, or (ii) directly or indirectly through another purchaser, plan, Payor or preferred provider organization network, solicit or negotiate preferred provider agreements or arrangements with any health care provider who participate or has participated in any CCN Network at any time.

3.3 Designated Contact. Payor agrees to identify a designated contact to oversee and coordinate the implementation of the CCN Contract Rate process. CCN and Payor will identify designated contacts who will be responsible for distribution, receipt and retrieval of Payor, CCN Facility and CCN Network Provider data.

3.4 Staff Training. Payor agrees to include all appropriate staff in training activities presented by CCN personnel concerning the interpretation and application of CCN Contract Rates, which must be completed, by Payor's staff prior to Re-Pricing CCN Network professional/facility claims and as needed thereafter.

3.5 Approved Marketing Collaterals. Payor will use only those approved CCN marketing collaterals when marketing products utilizing the CCN Network and will make no representation inconsistent with these materials.

3.6 Administrative Manual. Payor shall comply or direct its claims administrator to comply with the CCN administrative procedures specified in the CCN Administrative/Instructional Manual, as amended from time to time. A copy of the CCN Administrative/Instructional Manual shall be provided to Payor upon execution of this Agreement, upon Payor's request, and is incorporated herein by this reference.

3.7 Exclusive PPO Network Providers. Payor agrees to designate CCN Network Providers, and only them, as the Preferred Providers for the Covered Members in the Service Areas. Payor may not offer competing preferred provider organizations to the same group of Covered Members in the same Service Area.

3.8 Exclusive PPO Network. Payor agrees that CCN shall be the exclusive Preferred Provider organization network utilized by Payor for its Covered Members under its CCN Affiliated Health Plan in their Service Area(s) identified. Payor agrees that it shall not contract directly with health care providers in such Service Areas.

3.9 Notification to Covered Members. Payor agrees to notify Covered Members of the name and location of the CCN Network Providers, and to actively encourage Covered Members to use the CCN Network Providers if health care services are medically necessary in the Service Areas. Payor will include at least a 10% benefit plan differential(s) within their benefit plan design for utilization of CCN Network hospitals and professional providers (e.g. deductibles, co-insurance, co-payments, and/or stop-loss provisions). Payor may use electronic media or hard copy directories to notify Covered Members of CCN Network Providers.

To assist CCN Network Providers in recognizing Covered Members of CCN, Payor shall agree to identify, or direct its claims administrator to identify, CCN or its Affiliated Entity on identification cards, directories

and/or other forms of identification issued to Covered Members. Payor may not otherwise use CCN's names and trademarks without its prior written permission.

Payor agrees that failure to present a healthplan card or other form of identification containing a symbol or service mark which identifies CCN or its Affiliate Entity prior to receipt of Covered Services, may waive the right of the Covered Member or payor to receive healthcare services or benefits at the CCN reimbursement amount.

3.10 Prohibited Practices. Payor agrees that it will apply only the CCN reimbursement amounts for Covered Services provided by a CCN Network Provider and will not (1) use these reimbursement amounts in conjunction or combination with another rate or amount accessed by Payor through a contractual relationship with any other network or entity and (2) use the CCN Network as a "secondary" network to any other network accessed by Payor through contractual relationship with any other network or entity.

Any amounts received by Payor or Payor's clients from such practices shall constitute a breach of this Agreement and addendum and/or addenda, and Payor agrees to repay or cause Payor's clients(s) to repay such discounts received to CCN Network Providers within thirty (30) calendar days from receipt of such amounts. Payor also agrees to hold CCN harmless and indemnify CCN from any claims, actions, damages or liabilities arising from such practices by Payor or Payor's client(s).

3.11 Explanation of Benefits. Payor agrees to issue, or direct its claims administrator to issue, an explanation of benefits (EOB) to the CCN Network Provider for each claim from a CCN Network Provider and to identify the applicable CCN Reimbursement amount on the EOB.

3.12 Eligibility/Compensability. Payor agrees to verify, or direct its claims administrator to verify, Covered Member eligibility under the healthcare services plan during normal working hours if requested by CCN Network Providers. Payor will use best efforts to provide current eligibility to CCN Network Providers. However, final determination of eligibility/compensability shall be made at the time of claim adjudication.

3.13 Provider Reimbursement. Payor agrees to reimburse, or direct its claims administrator to reimburse, the CCN Network Provider according to the reimbursement amounts specified in the contracts between CCN Network Providers and CCN or its Affiliated Entity. Those reimbursement amounts shall constitute payment in full for health care services or benefits provided to Covered Members by the CCN Network Providers and shall be the amounts against which any applicable deductibles, co-payments and/or other plan provisions shall be applied. The reimbursement amounts shall apply to services rendered on or after the effective date of this Agreement and prior to the termination date of this Agreement.

3.14 Time for Payment. Payor shall be responsible for paying participating providers in the CCN Network for Covered Services provided to Covered Members in accordance with the Provider Contracts with such participating providers of the CCN Network within twenty-five (25) calendar days of receipt of a processable claim. If payment is not made within twenty-five (25) calendar days of Payor's receipt of a processable claim, the Payor may not be entitled to apply the CCN Contract Rates.

3.15 Claims Data. Payor will provide claims data for all claims Repriced by Payor including both CCN and non-CCN provider data at no cost to CCN, in a format mutually agreeable and acceptable to both parties by the 15th of the month following the end of each quarter (April, July, October, and January).

3.16 Monthly Reports. Payor will provide CCN with monthly cost savings reports reflecting all CCN Preferred Provider Re-Pricing activity by the 15th of the month for the prior month's business.

3.17 Additional Audit Rights. CCN shall have the additional right to periodically audit, upon reasonable notice, the records of Payor or its designee to determine if the rate established for each CCN Facility and/or CCN Network Provider has been Re-priced appropriately and accurately. The volume of claims to be audited will vary based on selection criteria. Payor authorizes CCN and its agents to have access to medical

information and other necessary data on hospitalized beneficiaries of Payor and/or Payor's client(s) which may be compiled by Payor's and or Payor's client(s) utilization review organization. Payor likewise agrees to include language in Payor's client(s) agreement, which allows for this access by CCN.

3.18 Correction of Errors. In the event that the CCN Contract Rates and/or terms referenced in Subsection 3.17 above have not been appropriately or accurately applied by Payor or its designee, Payor will make every reasonable effort to immediately correct the errors identified and readjudicate the affected claims.

3.19 Education of Payor's Clients. Payor shall be responsible for educating Payor's client(s) on CCN Network administration and re-pricing practices.

3.20 Notification of Network Implementation. Payor agrees to notify CCN of any CCN Affiliated Health Plan(s) that will implement the CCN Network in the Service Area at least fifteen (15) business days prior to the first day of the month that implementation is desired, so that CCN can announce the new CCN Affiliated Health Plan(s) to the CCN Network Providers.

3.21 Notification of Network Discontinuance. Payor agrees to notify CCN of any CCN Affiliated Health Plan(s) that discontinues its use of the CCN Network in a Service Area prior to the effective date of that termination so that CCN can notify the CCN Network Providers. Payor shall pay the CCN administrative fee(s) for any such CCN Affiliated Health Plan(s) until the termination date or the date Payor notifies CCN of the termination, whichever is later.

3.22 Release of Medical Records. Payor shall obtain from each Covered Member (or the legal representative thereof) a completed and signed authorization and consent for the release of medical records of Covered Member to authorized individuals and entities. All medical records of Covered Members and the removal and transferal thereof, will be treated in accordance with, and governed by, applicable state and federal laws relating to the confidentiality of same. Provided such authorizations and consent includes such further review, nothing in this section shall in any way limit or affect Payor's rights to review, or to have a regulatory body or accreditation agency review, a Preferred Provider's medical records with respect to a Covered Member, subject to applicable federal and state confidentiality laws.

## 4. Administrative

4.1 CCN Not a Healthcare Provider. The parties acknowledge that CCN is not a health care provider and that all members of the CCN Network are independent contractors and are not employees of CCN or its affiliates. Neither party shall attempt, directly or indirectly, to control, direct or interfere with the practice of medicine by any member of the CCN Network.

4.2 Survival of Audit Rights. The additional rights of CCN to audit Payor's and/or Payor's clients' records (as described in Subsection 3.17) will also survive termination of this Addendum.

4.3 Survival of Re-Pricing Rights. At the termination of this Addendum, Payor shall only Re-price claims for services submitted by CCN Facilities and/or CCN Network Providers which are incurred prior to the termination date and only for a period of ninety (90) calendar days following termination.

4.4 Compensation for CCN Services. Payor shall pay CCN the fees set forth in this Addendum for all CCN Services rendered pursuant to this Addendum.

4.4.1 No Pre-existing Client Relationship. Administrative fee compensation related to this Addendum relates only to Payor's client(s) for which no pre-existing CCN relationship exists, except as specifically agreed by CCN.

4.4.2 Payment Cycle. The CCN fees are due and payable to CCN thirty (30) calendar days following the

end of the month for all services provided to Payor or Payor's client(s) for the prior month.

4.5 Product Pricing. The specific prices to be charged for such services are set forth in Attachment 1 hereto, which may be amended by mutual written agreement of the parties.

IN WITNESS WHEREOF, the undersigned have executed this Addendum as of the date first written above.

CCN Managed Care, Inc.

Signed: ______________________

Name: ______________________

Title: ______________________

Date: ______________________

Payor: Iron Clad Insurance Company

Signed: ______________________

Name: ______________________

Title: ______________________

Date: ______________________

HealthCare VALUE Management, Inc.

Signed: ______________________

Name: ______________________

Title: ______________________

Date: ______________________

**Client Name: Iron Clad Insurance Company**

**Addendum GS2**
**Attachment 1**
**Product Pricing**

Hospital/Professional - PPO Network (PEPM Pricing)
PPO Network includes access to facility and professional providers.
Available in 48 states plus DC (No network available in MT or ND).

- Hospital/Professional Network — $3.50 pepm

Out-of-Area Coverage
National PPO access for members when traveling outside primary designated Service Area.
For emergent care or care outside primary Service Area.
PPO Network includes access to facility and professional providers.
Available in 48 states plus DC (No network available in MT or ND).

- Directly Contracted and Affiliate States — 20% of Savings

Directories

- Internet directories and provider search engine – Providers-on-the-Web (POW) — Included in PPO Network Fee
- Paper Directories (Typeset semi-annually in January and July.) — $5.00 per directory

*% of Savings = Savings is defined as the difference between billed charges and the CCN Contract Rate.

"Employee" means each covered active employee and any other person in his or her own right (such as former employees or others electing COBRA continuation coverage) and not by reason of status as a dependent or spouse that are located in the Service Area and eligible to receive services under the CCN-Affiliated Health Plan.

**Addendum GS2**
**Attachment 2**
**Service Area(s)**

CCN Network Services shall be used as the exclusive preferred provider networks in the following service area(s):

| Geographic Area | Effective Date | Geographic Area | Effective Date |
|---|---|---|---|
| AL | 4/01/2003 | MT | NA |
| AK1 | 4/01/2003 | NE | 4/01/2003 |
| AZ | 4/01/2003 | NV1 | 4/01/2003 |
| AR | 4/01/2003 | NH1 | 4/01/2003 |
| CA | 4/01/2003 | NJ | 4/01/2003 |
| CO1 | 4/01/2003 | NM | 4/01/2003 |
| CT1 | 4/01/2003 | NY | 4/01/2003 |
| DE | 4/01/2003 | NC | 4/01/2003 |
| DC | 4/01/2003 | ND | NA |
| FL | 4/01/2003 | OH1 | 4/01/2003 |
| GA | 4/01/2003 | OK | 4/01/2003 |
| HI | 4/01/2003 | OR | 4/01/2003 |
| ID | 4/01/2003 | PA | 4/01/2003 |
| IL | 4/01/2003 | RI1 | 4/01/2003 |
| IN | 4/01/2003 | SC | 4/01/2003 |
| IA | 4/01/2003 | SD | 4/01/2003 |
| KS | 4/01/2003 | TN | 4/01/2003 |
| KY | 4/01/2003 | TX | 4/01/2003 |
| LA | 4/01/2003 | UT | 4/01/2003 |
| ME | 4/01/2003 | VT | 4/01/2003 |
| MD | 4/01/2003 | VA | 4/01/2003 |
| MA1 | 4/01/2003 | WA1 | 4/01/2003 |
| MI | 4/01/2003 | WV | 4/01/2003 |
| MN | 4/01/2003 | WI | 4/01/2003 |
| MS | 4/01/2003 | WY | 4/01/2003 |
| MO | 4/01/2003 | | |

1 Network Access is through an affiliated contractor