**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LIFESPAN PHYSICIANS PROFESSIONAL SERVICE ORGANIZATION and THE MIRIAM HOSPITAL** | ) | |
| **V.** | ) | **C.A. NO. 05-239S** |
| **HEALTHCARE VALUE MANAGEMENT, INC. and IRON WORKERS DISTRICT COUNCIL OF NEW ENGLAND WELFARE FUND** | ) | |

**DEFENDANT, IRON WORKERS DISTRICT COUNCIL OF NEW ENGLAND WELFARE FUND'S, RESPONSES TO PLAINTIFF'S INTERROGATORIES**

Defendant, Iron Workers District Council of New England Welfare Fund, hereby responds to the following interrogatories propounded by the plaintiffs. The defendant reserves the right to supplement its responses if additional information or additional facts become available to it.

1. State the name, address, date of birth, social security number and current occupation of the person or persons providing the Answers to these Interrogatories.

**ANSWER**: Anne Fini, Director of Claim Operations, Iron Clad, 161 Granite Avenue, Dorchester, MA 02124. Objection to providing date of birth and social security number as it violates the privacy interest of the person answering on behalf of the defendant, and is neither relevant nor reasonably calculated to lead to the discovery of relevant or admissible evidence.

2. Identify all persons who were consulted and/or provided information in connection with the preparation of these Answers to Interrogatories, and identify all parts or subparts for which each such person was consulted and/or provided information.

**ANSWER**: None other than attorneys for the Iron Workers District Council of New England Welfare Fund.

3. Identify all persons who were consulted and/or provided information in connection with the preparation of the Responses to the accompanying Request for Production of Documents, and identify all Responses or portions of Responses for which each person was consulted and/or provided information.

**ANSWER**: None other than attorneys for the Iron Workers District Council of New England Welfare Fund.

4. Identify all persons having knowledge of the facts and incidents alleged in the Complaint, and specify which facts and incidents are within the knowledge of each such person.

**ANSWER**:

Anne Fini
Iron Clad
161 Granite Avenue
Dorchester, MA 02124

Patricia Doyle
Iron Clad
161 Granite Avenue
Dorchester, MA 02124

Susan Oakes
National Care Network
12809 West 122nd Street
Overland Park, KS 66213

Linn F. Freedman, Esq.
Nixon Peabody, LLP
One Citizens Plaza, Suite 500
Providence, RI 02903

Barbara Shaffer
Ullicare
P.O. Box 61183
King of Prussia, PA 19406

Sandy Saleeba
HCVM
100 River Ridge Drive, 1st Floor
Norwood, MA 02061

Art Edsall
CIGNA Healthcare
10490 Little Patuxent Pkwy.
60 Corporate Center, Suite 400
Columbia, MD 21044

Judy Randall
Lifespan / Physicians PSO
55 Claverick Street, 2nd Floor
Providence, RI 02903

Sheryl Cummings
Ullicare
P.O. Box 61183
King of Prussia, PA 19406

James Messenger
ULLICARE Rx
8403 Colesville Road
Silver Springs, MD20910

Defendant objects to the remainder of this interrogatory in that it is overbroad, burdensome and may include trial preparation, work product or attorney/client material.

Without waving said objection, pursuant to Fed.R.Civ.P. 33 (c), the defendant refers to the correspondence and email printouts supplied to plaintiffs' attorneys in response to request for the production of documents.

5. Identify all documents and witnesses that you anticipate using at trial, including a description of the witnesses, anticipated testimony.

**ANSWER**: The defendant has not yet designated the witnesses that it intends to call to testify at trial in this matter and reserves the right to amend its answer. The defendant

objects to this interrogatory in that that it is overbroad, burdensome and may require speculation of witnesses' testimony. Defendant further objects in that it may require disclosure of trial preparation or work product material.

Without waving said objection, pursuant to Fed.R.Civ.P. 33 (c), the defendant refers to the correspondence and email printouts supplied to plaintiffs' attorneys in response to request for the production of documents.

6. Identify all persons from whom statements have been taken regarding the allegations set forth in the Complaint.

**ANSWER**: None.

7. State in detail the factual basis for the refusal to pay fully for services rendered to John Doe at TMH from November 13, 2003 to November 27, 2003 as set forth in the Complaint.

**ANSWER**: The defendant states that it had paid the plaintiffs in full on the hospital charges of John Doe. The Iron Worker Fund paid in accordance with John Doe's plan of benefits which include the applicable deductibles. The Iron Worker Fund paid for each item either on the discount amount or more than the usual and customary charge for such item.

8. Please state in detail any and all portions of the agreement between Healthcare Value Management, Inc., (HCVM) and Iron Workers that you rely upon in refusing to pay fully for services rendered to John Doe at TMH from November 13, 2003 to November 27, 2003.

**ANSWER**: The Iron Worker Fund states that it paid the plaintiffs in full on the hospital charges for John Doe. There is no written contract between HCVM and the Iron Worker Fund.

9. Please state in detail each and every communication you have had with HCVM regarding the services rendered to John Doe at TMH from November 13, 2003 to November 27, 2003, including but not limited to, demands for payment for such services.

**ANSWER**: See answer to Interrogatory No. 13.

10. Describe in detail any and all agreements in effect between HCVM, Iron Workers and/or Iron Clad with respect to payment for services rendered to its members by PSO and/or TMH.

**ANSWER**: There is no written contract between HCVM and the Iron Worker Fund.

Hospital Claims for participants in the Iron Workers Plan are mailed directly to HCVM. HCVM reprices the bill with the discounted rate. HCVM mails that claim with the

discounted rate to Iron Clad. In return, the Iron Worker Fund paid a flat fee each month to HCVM based on the number of participants covered in the plan. Iron Clad processes the claim according to the member's plan of benefits. As part of the claims processing procedure, the repriced amount is only one element in determining payment amounts. .

11. Please state in detail any and all portions of the agreement between HCVM and Iron Workers that you rely upon in refusing to fully pay for services rendered to John Doe at TMH from November 13, 2003 to November 27, 2003.

**ANSWER**: The Iron Worker Fund states that it paid the plaintiffs in full for the hospital charges for John Doe. There is no written contract between HCVM and the Iron Worker Fund.

12. Please list in detail each communication Iron Clad and/or Iron Workers had with HCVM regarding John Doe and/or the services rendered by TMH, including the type of communication, the date of communication, the substance of communication and identify the individuals privy to the communication.

**ANSWER**: See answer to Interrogatory No. 13, and pursuant to Fed.R.Civ.P. 33 (c), the defendant refers to the correspondence and email printouts supplied to plaintiff's attorneys in response to request for production of documents.

13. Please state in detail each and every communication Iron Workers, Iron Clad or an agent of either had with Plaintiffs regarding the services rendered to John Doe by TMH.

**ANSWER**: I received a call from Sandy Saleeba of HCVM asking me to participate in a conference call with Judy Randall, the Director of Payer Relations and Contracting of Lifespan, PSO. I believe the conference call was May 12, 2004. I explained to both Sandy and Judy that we, through Susan Oakes, had been actively attempting to obtain additional information in order to continue the audit of the hospital charges, but had not received cooperation from the Miriam Hospital and/or Lifespan billing parties. I explained how all we received initially was a UB-92 with a charge for blood storage in the amount of $516,729.00 and since our plan does not cover blood storage, we just should have denied the claim. However, rather than do so, as a courtesy to the hospital, we asked for additional information and sent the claim to our vendor for assistance.

I told them what I had been told by Ullicare Pre-Cert/Case Management nurse that the hospital was not cooperative with Ullicare. I told them how I was hearing this same thing now from Susan Oakes of NCN. Ms. Oakes had advised the hospital that she wanted the medical records and was told the hospital would not release them without an authorization from the patient.

I recall Judy getting someone from billing on the call – I think it was Maria, but cannot be 100% certain – and actually this person was supposed to be on the conference call from the beginning but was not. At this point, once again, I was told of the hospital's policy by this person that we could not have the information that we were requesting.

When this person was finished, I said to Ms. Randall and Ms. Saleeba something to the effect – "now you see what we have been experiencing, why were we told to obtain an authorization if you weren't going to release the information?"

I expressed my concern over issuing this kind of payment for something that I could not verify, and since there was a continuing lack of cooperation, I was beginning to be suspect of the charges. I told Ms. Randall and Ms. Saleeba that we had written to the member to ask for a written authorization and had not yet received it, but now after this call, I felt that the hospital had, again, not been truthful.

I cannot be 100% certain that I had this conversation with Ms. Randall and Ms. Saleeba, or that they discussed the arrangement and then Ms. Saleeba called me back, but Ms. Randall asked if I would consider making a payment and she would attempt to get the records. I agreed to release a good-faith payment of $200,000.00 (pending approval from counsel).

I received approval and did, in fact, release $200,000.00 on May 20, 2004. I then faxed a memo to Ms. Randall on May 25, 2004, which allowed time for the checks to reach the hospital. In this fax, I advised that had I issued payment and, as we had agreed, the hospital would immediately release the records to me.

Ms. Saleeba called me on June 8 and told me the hospital said they were never paid. I faxed Ms. Saleeba a copy of my May 25, 2004 memo and copies of the canceled checks that showed that the hospital presented them for payment on May 24, 2004. Ms. Saleeba told me that Ms. Randall apologized and said the records would be on the way. Most of the hospital charges were for medications. Consequently, we needed to confirm that these medications had actually been administered to the patient. The relevant portions of the medical records as photocopied and supplied by the hospital were incomplete or illegible. We then needed to request from the hospital a complete record of the administration of the medications.

The next time I personally had communications with the hospital was on August 5, 2004, when Ms. Randall called me to check on the status of the review. I told her that Ms. Oakes had still not received answers to her questions and, in fact, the hospital representatives had been rude to Ms. Oakes, were not returning her phone calls, and even once hung up on her. I stated that the next step might be that our fund attorney would be sending her a denial.

14. Please state in detail any and all reasons Iron Workers and/or Iron Clad refused to fully pay for services rendered to John Doe at TMH.

**ANSWER**: The defendant states that it had paid the plaintiffs in full on the hospital charges for John Doe. The Iron Worker Fund paid in accordance with John Doe's plan of benefits which include applicable deductibles. The Iron Worker Fund paid for each item either on the discount amount or more than the usual and customary charge for such item.

15. For each person whom Defendant expects to call as an expert witness at trial, please identify him/her including, but not limited to, his/her specialty, professional education and experience, the subject matter on which each such person is expected to testify, the substance of the facts and opinions to which each such expert is expected to testify, the summary of the grounds for each such opinion and any treatises or learned authorities relied upon by the expert.

**ANSWER**: The Defendant, as of the date of these Answers, has not retained any expert witness(es) in this matter. The Defendant reserves the right to supplement this answer, if appropriate, in accordance with the applicable court rule(s) and/or any scheduling order(s) entered in this matter, and if and when said expert witness(es) are retained.

16. Please set forth any and all calculations of Defendants quantifying amount that Defendant alleges it owes to Plaintiff.

**ANSWER**: The defendant states that it had, in fact, paid the plaintiffs in full on the hospital charges for John Doe and owes the plaintiffs nothing. The Iron Worker Fund paid in accordance with John Doe's plan of benefits which include applicable deductibles. The Iron Worker Fund paid for each item either on the discounted amount or more than the usual and customary charges for such item. Also, pursuant to Fed.R.Civ.P. 33 (c), the defendant refers to the correspondence and email printouts supplied to plaintiffs' attorneys in response to request for production of documents.

17. Please identify each person that has knowledge concerning the allegations set forth in the Complaint and include their address, employer and a synopsis of their knowledge.

**ANSWER**: See answer to Interrogatory No. 4.

Signed under the pains and penalties of perjury this 19th day of January, 2006

Anne Fini (signature)
Anne Fini



This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

**As to the Objections:**

Michael J. Lepizzera, Jr., #4995

Christian C. Potter, #5359
Lepizzera and Laprocina
301 Metro Center Blvd., #102
Warwick, Rhode Island 02886
(401) 739-7397
(401) 384-6950

## CERTIFICATION

I certify that on this 19th day of January, 2006 a true and accurate copy of the within was sent by facsimile to

Linn Foster Freedman, Esquire
Nixon Peabody, LLP
One Citizens Plaza
Providence, Rhode Island 02903

Matthew T. Oliverio, Esquire
OLIVERIO & MARCACCIO, LLP
55 Dorrance Street, Suite 400
Providence, RI 02903

and was hand delivered on January 20, 2006 to:

Linn Foster Freedman, Esquire
Nixon Peabody, LLP
One Citizens Plaza
Providence, Rhode Island 02903

Matthew T. Oliverio, Esquire
OLIVERIO & MARCACCIO, LLP
55 Dorrance Street, Suite 400
Providence, RI 02903

**UNITED STATES DISTRICT VOURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LIFESPAN PHYSICIANS PROFESSIONAL SERVICE ORGANIZATION and THE MIRIAM HOSPITAL** *Plaintiffs* | : | |
| **VS.** | : | **C.A. NO. 05-239S** |
| **HEALTHCARE VALUE MANAGEMENT, INC. and IRON WORKERS DISTRICT COUNCIL OF NEW ENGLAND WELFARE FUND** *Defendants* | : | |

**DEFENDANT HEALTH CARE VALUE MANAGEMENT, INC.'S ANSWERS TO PLAINTIFFS' INTERROGATORIES**

Now comes Defendant, Healthcare Value Management, Inc., by it attorney, and answers Plaintiffs' Interrogatories as follows.

**GENERAL OBJECTIONS**

Defendant Healthcare Value Management, Inc. ("HCVM") hereby incorporates the following general objections into each and every specific objection stated below and into each and every response provided hereafter as if such general objections were set forth therein in full:

1. Defendant HCVM objects in whole or in part to each and every request to the extent that it calls for disclosure of information from persons or entities other than this Defendant.

2. Defendant HCVM objects in whole or in part to each and every request to the extent that it is vague, ambiguous or of uncertain meaning.

3. Defendant HCVM objects in whole or in part to each and every request to the extent that it purports to require Defendant HCVM to provide information or documents not in its possession, custody, or control.

4. Defendant HCVM objects in whole or in part to each and every request to the extent that it is neither relevant to the subject matter of the instant litigation nor reasonably calculated to lead to the discovery of admissible evidence.

5. Defendant HCVM objects in whole or in part to each and every request to the extent that it purports to require disclosure of any information or document, or otherwise requests information or documents, obtained or prepared for, or in anticipation of litigation or for trial, constitutes attorney work product, is made confidential by law, reveals the substance of communications protected from disclosure by the attorney/client privilege, or is otherwise privileged from disclosure pursuant to the state or federal law. Any inadvertent production of such documents or disclosure of such information shall not be deemed a waiver of any confidence, privilege or of the work product doctrine.

6. Defendant HCVM objects in whole or in part to each and every request to the extent that it seeks information or documents that contain confidential information which would impinge on the constitutionally protected right to privacy of individuals. Any inadvertent production of such documents or disclosure of such information shall not be deemed a waiver of any confidence or privilege.

7. In responding to each request, Defendant HCVM does not concede the relevancy, materiality or admissibility of the response. Defendant HCVM's response to each request is made subject to, and without waiving or intending to waive, any objection to the competency, relevancy, materiality, privilege or admissibility as evidence for any purpose of any of the responses given herein.

8. Defendant HCVM reserves all objections as to the admissibility at trial of any information provided. All information provided by Defendant HCVM is for use in this litigation only and for no other purpose.

9. These general objections will be deemed to be continuing throughout the responses which follow whether or not expressly referred to therein. The stating of additional or other specific objections below shall not constitute a waiver of these general objections.

Defendant HCVM 's objections to Plaintiff's Interrogatories are made without waiver of, or prejudice to, any additional objections Defendant HCVM may make.

10. All such objections are hereby expressly preserved, as is the right to move for a protective order.

**Interrogatory No. 1:** State the name, address, date of birth, social security number and current occupation of the person or persons providing Answers to these Interrogatories.

**Answer No. 1:** Jennifer Schneid; 3200 Highland Avenue, Downers Grove, IL 60515; Counsel, First Health Group Corporation; Objection to providing date of birth and social security numbers as it violates the privacy interests of the person answering on behalf of the Defendant, and is neither relevant nor reasonably calculated to lead to the discovery of relevant or admissible evidence.

**Interrogatory No. 2:** Identify all persons who were consulted and/or provided information in connection with the preparation of these Answers to Interrogatories, and identify all parts or subparts for which each such person was consulted and/or provided information.

**Answer No. 2:** Sandra Saleeba, Provider Networks First Health/HCVM. Business address is 100 River Ridge Drive, 1st Floor, Norwood, MA 02062. Currently employed by First Health/HCVM. Ms. Saleeba has knowledge regarding discussions between Plaintiff and co-defendant, and participated in discussions to attempt to resolve this issue.

**Interrogatory No. 3:** Identify all persons who were consulted and/or provided information in connection with the preparation of the Responses to the accompanying Request for Production of Documents, and identify all Responses or portions of Responses for which each such person was consulted and/or provided information.

**Answer No. 3:** See Answer to Interrogatory No. 2. Defendant also incorporates by

reference as part of its response all documents provided in response to Plaintiff's Request for Production of Documents.

**Interrogatory No. 4**: Identify all persons having knowledge of the facts and incidents alleged in the Complaint, and specify which facts and incidents are within the knowledge of each such person.

**Answer No. 4**: See Answer to Interrogatory No. 2. Defendant also incorporates by reference as part of its response all documents provided in response to Plaintiff's Request for Production of Documents.

**Interrogatory No. 5**: Identify all documents and witnesses that you anticipate using at trial, including a description of the witnesses' anticipated testimony.

**Answer No. 5**: Objection to this request inasmuch as it seeks information which invades and violates defense counsel's litigation strategy, attorney/client privilege and work product doctrine. Without waiving said objection, Defendant responds that it has not yet determined what documents it intends to introduce or what witnesses it intends to call at the trial of this matter.

**Interrogatory No. 6**: Identify all persons from whom statements have been taken regarding the allegations set forth in the Complaint.

**Answer No. 6**: Objection to this request inasmuch as it seeks information which invades and violates defense counsel's litigation strategy, attorney/client privilege and work product doctrine. Without waiving said objection, no formal or written statements have been taken or obtained.

**Interrogatory No. 7**: State in detail the factual basis for the refusal to pay fully for services rendered to John Doe at TMH from November 13, 2003 to November 27, 2003 as set forth in the Complaint.

**Answer No. 7**: Defendant Objects to this interrogatory as it implies that HCVM is responsible for payment. HCVM is not responsible for payment. Section 1.2 PAYMENT of the agreement between HCVM and Lifespan/Physicians, Professional Services Organization, Inc. states: "HCVM represents that Payors shall compensate the Hospitals for the services provided by the Hospitals in accordance with the terms and conditions of this Agreement…" The Payor in this case is the Iron Workers District Council of New England Welfare Fund. Defendant is unaware of any factual basis for Iron Workers District Council of New England Welfare Fund's refusal to pay for services rendered.

**Interrogatory No. 8**: Please state in detail any and all portions of the agreement between PSO and HCVM that you rely upon in refusing to pay fully for services rendered to John Doe at TMH from November 13, 2003 to November 27, 2003.

**Answer No. 8**: See answer to Interrogatory No. 7.

**Interrogatory No. 9**: Please state in detail each and every communication you have had with Ironworkers District Council and/or Iron Clad regarding the services rendered to John Doe at TMH from November 13, 2003 to November 27, 2003, including but not limited to, demands for payment for such services.

**Answer No. 9**: In April 2004 Sandra Saleeba of HCVM participated in a call along with Judy Randall of PSO and Ann Fini of Iron Clad in an attempt to resolve the outstanding claim. During the call Iron Clad had requested an itemized bill. On information and belief, PSO initially refused to send an itemized bill until Iron Clad agreed to send payment of $200,000.00. Judy Randall faxed the itemized till to Sandra Saleeba on April 8, 2004. Sandra Saleeba faxed the itemized bill to Ann Fini on May 12, 2004.

**Interrogatory No. 10**: Describe in detail the factual basis for each Affirmative Defense set forth in your Answer to the Complaint.

**Answer No. 10**: The factual bases are contained in the written contractual agreements between the parties. Such contractual obligations between Plaintiff and HCVM do not obligate

HCVM to make payment for services rendered by any of the PSO's hospitals to the network members or their employees. HCVM has complied, in good faith, with all of its express and implied obligations to Plaintiff.

**Interrogatory No. 11**: Describe in detail any and all agreements in effect between HCVM and Ironworkers District Council and/or Iron Clad with respect to payment for services rendered to its members by PSO and/or TMH.

**Answer No. 11**: Article II of Agreement between HealthCare VALUE Management, Inc. and Union Labor Life Insurance Company (which contains standard client contract language, and at one time governed the relationship between HCVM and Iron Workers District Counsel of New England) states that as the Payor, co-defendant is responsible for payment of medical claims; unsigned copy of Amendment to the Agreement Between HCVM and Iron Clad Insurance Company; unsigned copy of Agreement Between HCVM and Iron Workers Local 7. Defendant also incorporates by reference as part of its response all documents provided in response to Plaintiff's Request for Production of Documents.

**Interrogatory No. 12**: Please state in detail any and all portions of the agreement between HCVM and Ironworkers District Council of New England Welfare Fund that you rely upon in refusing to fully pay for services rendered to John Doe at TMH from November 13, 2003 through November 27, 2003.

**Answer No. 12**: Article II of Agreement between HealthCare VALUE Management, Inc. and Union Labor Life Insurance Company (which contains standard client contract language, and at one time governed the relationship between HCVM and Iron Workers District Counsel of New England) states that as the Payor, co-defendant is responsible for payment of medical claims. Defendant also incorporates by reference as part of its response all documents provided in response to Plaintiff's Request for Production of Documents.

**Interrogatory No. 13**: Please list in detail each communication HCVM had with Iron Clad and/or Ironworkers District Council regarding John Doe and/or the services rendered by TMH, including the type of communication, the date of the communication, the substance of the

communication and identify the individuals privy to the communication.

**Answer No. 13:** See answer to Interrogatory No. 9.

**Interrogatory No. 14:** Please state in detail each and every communication HCVM had with Plaintiffs regarding the services rendered to John Doe by TMH.

**Answer No. 14:** See answer to Interrogatory No. 9. In addition, on March 24, 2004 a S. Peterson at PSO left a phone message for Sandra Saleeba of HCVM to discuss the issue; however, Ms. Saleeba was out of the office. It was requested that PSO fax over the issue with the claim so Ms. Saleeba could review it upon her return to the office. On April 1, 2004 a follow up call was made to Ms. Saleeba by S. Peterson at PSO. See Letter from Judy Randall at PSO to Sandy Saleeba of HCVM dated 4/8/04 requesting assistance.

**Interrogatory No. 15:** Please state in detail any and all reasons for HCVM and/or Ironworkers District Council's refusal to fully pay for services rendered to John Doe at TMH.

**Answer No. 15:** HCVM is not obligated to make any payment for medical services and bills incurred by Ironworkers District Council's members. HCVM is unaware of the reasons for Ironworkers District Council's refusal to make payment.

**Interrogatory No. 16:** Please state in detail the facts that substantiate your denial of Paragraph 15 of the Complaint.

**Answer No. 16:** HCVM does not perform Utilization Review services for Iron Workers District Counsel of New England Welfare Fund. Per letter dated November 14, 2003, Ullicare authorized the hospitalization of the patient in question.

**Interrogatory No. 17:** Please state in detail the facts that substantiate your denial of Paragraph 17 of the Complaint.

**Answer No. 17:** HCVM did not request an itemized bill on January 19, 2004, and did not receive the bill on January 20, 2004. Based on information and belief an itemized bill was requested by Iron Clad.

**<u>Interrogatory No. 18</u>:** Please state in detail the facts that substantiate your denial of Paragraph 18 of the Complaint.

**<u>Answer No. 18</u>:** To the best of my knowledge, HCVM was not contacted by PSO on the dates listed in Paragraph 18. Based on the hospital's notes from their patient account system it is my belief that PSO made contact with the co-defendant on these dates rather than HCVM.

**<u>Interrogatory No. 19</u>:** Please state in detail the facts that substantiate your denial of Paragraph 19 of the Complaint.

**<u>Answer No. 19</u>:** To the extent that this correspondence is construed as a request for payment, based on the language in the letter it appears to be a request for assistance rather than a request for payment.

**<u>Interrogatory No. 20</u>:** Please state in detail the facts that substantiate your denial of Paragraph 22 of the Complaint.

**<u>Answer No. 20</u>:** No correspondence was received by HCVM from PSO directed to HCVM demanding payment for services rendered to Mr. Doe. HCVM is not obligated to make any payments for medical services rendered to co-defendant's members per Section 1.2 PAYMENT of the agreement between HCVM and Lifespan/Physicians, Professional Services Organization, Inc.

**<u>Interrogatory No. 21</u>:** Please state in detail the facts that substantiate your denial of Paragraph 25 of the Complaint.

**<u>Answer No. 21</u>:** HCVM has insufficient knowledge to determine whether Plaintiff has fulfilled all obligations by providing all necessary medical services to John Doe.

**<u>Interrogatory No. 22</u>:** Please state in detail the facts that substantiate your denial of Paragraph 32 of the Complaint.

**<u>Answer No. 22</u>:** HCVM does not approve or disapprove of medical services rendered to co-defendant's members.

**Interrogatory No. 23**: Please state in detail the facts that substantiate your denial of Paragraph 34 of the Complaint.

**Answer No. 23**: HCVM is not obligated to make any payment for medical services and bills incurred by co-defendant's members.

**Interrogatory No. 24**: Please state in detail the facts that substantiate your denial of Paragraph 35 of the Complaint.

**Answer No. 24**: HCVM has not paid any amounts to Miriam Hospital and is not obligated to make any payments.

**Interrogatory No. 25**: Please state in detail the facts that substantiate your denial of Paragraph 37 of the Complaint.

**Answer No. 25**: HCVM is not obligated to make payment for any medical services provided to co-defendant's members.

**Interrogatory No. 26**: For each person whom Defendant expects to call as an expert witness at trial, please identify him/her including, but not limited to, his/her specialty, professional education and experience, the subject matter on which each such person is expected to testify, the substance of the facts and opinions to which each such expert is expected to testify, the summary of the grounds for each such opinion and identify any treatises or learned authorities relied upon by the expert.

**Answer No. 26**: Defendant has not identified any expert witnesses at this time, but will supplement this response in accordance with the Court's pretrial order and the Federal Rules of Civil Procedure.

**Interrogatory No. 27**: Please set forth any and all calculations of Defendants quantifying the amount that Defendants allege it owes to Plaintiff.

**Answer No. 27**: HCVM has made so such calculations as it has no responsibility to make payment to Plaintiff.

Signed under the pains and penalties of perjury this 8th day of December, 2005.

Jennifer Schneid

Jennifer Schneid, Esquire

As to Objections:
Defendant,
Healthcare Value Management, Inc.
By its Attorney,

Matthew T. Oliverio, Esquire (#3372)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax

Dated: December 9, 2005

**CERTIFICATION**

I hereby certify that a true copy of the foregoing *DEFENDANT HEALTH CARE VALUE MANAGEMENT, INC.'S ANSWERS TO PLAINTIFFS' INTERROGATORIES* was mailed, postage prepaid, to Linn Fr. Freedman, Esquire, NIXON PEABODY, LLP., One Citizens Plaza, Suite 500, Providence, RI 02903 and Michael J. Lepizzera Jr., Esquire, LEPIZZERA LAPROCINA Counsellors at Law, 301 Metro Center Blvd., Suite 102, Warwick, RI 02886 on the 9th day of December, 2005.