UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIFESPAN PHYSICIANS PROFESSIONAL SERVICE ORGANIZATION and THE MIRIAM HOSPITAL, Plaintiffs | : | |
| v. | : | C.A. No. 05-239S |
| HEALTHCARE VALUE MANAGEMENT INC. and IRON WORKERS DISTRICT COUNCIL OF NEW ENGLAND WELFARE FUND, Defendants | : | |

**FIRST AMENDED COMPLAINT**

Plaintiffs, Lifespan Physicians Professional Service Organization ("PSO") and The Miriam Hospital ("Miriam") by and through its attorneys, allege in this Amended Complaint against Defendants, Healthcare Value Management, Inc. ("HCVM") and Iron Workers District Council of New England Welfare Fund ("Iron Workers") as follows:

**NATURE OF THE ACTION**

1. This action is brought to recover the costs of healthcare services provided to an Iron Workers member for which Defendants unjustly refuse to pay.

**PARTIES**

2. Plaintiff, PSO is a professional services organization whose members provide healthcare services to patients and which negotiates contracts on behalf of hospitals with different entities for the provision of such healthcare services. The PSO is organized under the laws of the State of Rhode Island with a principal place of business at 167 Point Street, Providence, Rhode Island.

3. Plaintiff, Miriam is a healthcare provider organized under the laws of the State of Rhode Island with a principal place of business at 164 Summit Avenue, Providence, Rhode Island.

4. Upon information and belief, Defendant, HCVM is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business in Norwood, Massachusetts.

5. Upon information and belief, Defendant, Iron Workers is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business in Dorchester, Massachusetts.

6. Upon information and belief, HCVM entered into a contractual relationship with Iron Workers wherein Iron Workers agreed to compensate Miriam for services provided to its members in accordance with terms and conditions of an Agreement entered into between HCVM and PSO on behalf of Miriam.

7. HCVM represented to Plaintiffs that Iron Workers was a member organization eligible to receive discounted healthcare services at Miriam through documentation and otherwise, and further that it had a valid and binding agreement with Iron Workers.

8. Miriam provided healthcare services to John Doe, a member of Iron Workers.

9. Pursuant to the Agreement between the PSO, on behalf of Miriam, and HCVM, on behalf of Iron Workers Fund, the Defendants are responsible for the payment of services provided to the Defendant's Member, John Doe by Miriam.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

11. This Court has personal jurisdiction over HCVM as it purposefully availed itself of the privilege of conducting business in Rhode Island. Defendant HCVM entered into a Reimbursement Agreement with the PSO on behalf of Emma Pendleton Bradley Hospital, Newport Hospital, Rhode Island Hospital, and The Miriam Hospital (the "Hospitals") for payment of medical services provided to HCVM members.

12. This Court has personal jurisdiction over Iron Workers, as pursuant to its agreement with HCVM, it agreed to compensate the Hospitals providing services to its members, including The Miriam Hospital, pursuant to the Reimbursement Agreement. In addition, one of its members actually received medical services at The Miriam Hospital for which it has not been reimbursed by Iron Workers.

13. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district. Specifically, the reimbursement agreement was entered into this judicial district and The Miriam Hospital provided the medical services at issue in this judicial district.

## FACTS

14. On or about November 13, 2003, John Doe, a participant in the Iron Workers Fund, presented himself for emergency treatment at Miriam in Providence, Rhode Island.

15. Due to John Doe's condition, the treating physician at Miriam rendered particular treatment to Mr. Doe's condition, which included ordering certain medication and blood products.

16. The patient remained in Miriam from November 13, 2003 through discharge on November 27, 2003 and received treatment throughout his entire admission.

17. John Doe's admission to Miriam was initially approved by HCVM for a three day stay on December 2, 2003. An approval of an additional fourteen day stay was provided by the utilization review department of HCVM on December 29, 2003. This approval included a determination that John Doe was eligible for services at Miriam as a member of Iron Workers and that the services would be paid pursuant to the Reimbursement Agreement.

18. Ullicare, a utilization review company providing utilization review services to Iron Clad for Iron Workers approved the admission of John Doe into Miriam. This approval included a determination that John Doe was eligible for services at Miriam as a member of Iron Workers and that the services would be paid pursuant to the Reimbursement Agreement.

19. The PSO forwarded the claim for reimbursement for services rendered to John Doe to the Iron Workers' in-house claims administrator Iron Clad on December 12, 2003. The amount of the charges totaled $598,057.80. (Please see attached Exhibit A).

20. Defendant, HCVM requested an itemized bill of the claim on January 19, 2004, which was provided by Plaintiff, PSO, to the Defendant, HCVM on January 20, 2004.

21. Plaintiff, PSO contacted HCVM on February 23, 2004, March 5, 2004, March 12, 2004, and March 18, 2004 to request payment of the claim.

22. On April 8, 2004, the PSO forwarded correspondence to Defendant, HCVM again requesting payment of the claim.

23. Thereafter, Defendant, Iron Workers paid $236,513.20 toward the claim. The patient was responsible to pay $900.64 toward the claim.

24. Pursuant to the Reimbursement Agreement in effect between the PSO, on behalf of Miriam, and HCVM on behalf of Iron Workers, Miriam is to receive payment of 79.88% of all charges for services rendered to HCVM members. Accordingly, Defendants are responsible for the balance of the claim totaling $240,571.73, not including costs, attorney's fees and interest.

25. On several occasions, the PSO has written to the Defendants to demand payment for the balance of fees owed to Miriam for the medical services provided to Mr. Doe. Defendants have refused to make any further payment to Miriam.

26. Defendants allege that there was no written agreement between HCVM and Iron Workers and therefore, that they are not responsible to reimburse Miriam for services rendered to John Doe.

**COUNT I**
**BREACH OF CONTRACT**
**(HCVM)**

27. Plaintiffs repeat and make a part hereof each and every allegation set forth in Paragraphs 1-26 of this Amended Complaint.

28. On or about June 1, 1998 by their actions and deeds, the PSO and HCVM entered into a contract ("Reimbursement Agreement"), on behalf of Miriam and HCVM members, including Iron Workers, the terms of which included that Miriam would

provide necessary medical services to John Doe in exchange for Iron Workers paying for such services at a discounted rate as a result of being a member of HCVM's network.

29. Pursuant to the Reimbursement Agreement between Plaintiffs and HCVM, HCVM was required to enter into a written agreement with each member employer requiring it to pay for services rendered to the employer's members at Lifespan hospitals, including Miriam.

30. Pursuant to the contract between Plaintiffs and HCVM, HCVM was required to provide a list of member employers who were part of HCVM's network to Plaintiffs in order for Plaintiffs to determine eligibility for discounted services. Such list was provided by HCVM and included Iron Workers as a member.

31. The list of member employers who were eligible for services pursuant to the Reimbursement Agreement, including Iron Workers was provided to Miriam.

32. Pursuant to the contract between Plaintiffs and HCVM and the contract between HCVM and Iron Workers, Iron Workers, as a member of HCVM's network was to pay Miriam for services rendered to Iron Workers' members at an amount of 79.88% of charges.

33. Miriam and the PSO have fulfilled their obligations under the contract with HCVM and Iron Workers by providing all necessary medical services to John Doe, a member of Iron Workers and covered by the Reimbursement Agreement.

34. Defendant HCVM has breached the contract with Plaintiffs by failing to enter into a written contract with Iron Workers and failing to enforce the provisions of its contract with Plaintiffs in its contract with Iron Workers.

35. HCVM has breached the Agreement with the PSO and The Miriam Hospital by failing to require Iron Workers to pay for the medical services provided to Mr. Doe in accordance with its contract with Plaintiffs.

WHEREFORE, Plaintiffs demand full judgment against Defendant HCVM on Count I granting damages together with attorney's fees, interest, costs and such other and further relief as this Court shall deem just and proper.

**COUNT II**
**BREACH OF CONTRACT**
**(IRON WORKERS FUND)**

36. Plaintiffs repeat and make a part hereof each and every allegation set forth in Paragraphs 1-35 of this Amended Complaint.

37. On or about June 1, 1998 by their actions and deeds, the PSO and HCVM entered into a contract ("Reimbursement Agreement"), on behalf of Miriam and HCVM members, including Iron Workers, the terms of which included that Miriam would provide necessary medical services to John Doe in exchange for Iron Workers paying for such services at a discounted rate as a member of HCVM's network.

38. Pursuant to the contract between PSO and HCVM, HCVM entered into an agreement with Iron Workers wherein Iron Workers' members would be eligible to receive healthcare services from Miriam at a discounted rate as an advantage to being a member of HCVM's network.

39. On or about November 13, 2003, John Doe, a member of Iron Workers, presented himself for emergency treatment at Miriam in Providence, Rhode Island.

40. John Doe's admission to Miriam was approved and authorized by Ullicare, a utilization review company providing utilization review services to Iron Clad

on behalf of Iron Workers. This authorization included that John Doe was an eligible member of Iron Workers and subject to the Reimbursement Agreement.

41. Pursuant to the approval and authorization of Iron Workers for the provision of healthcare services to John Doe at Miriam, Iron Workers agreed to compensate Miriam for those healthcare services pursuant to the Reimbursement Agreement negotiated by HCVM on behalf of Iron Workers in the amount of 79.88% of charges.

42. Miriam provided healthcare services to Iron Workers' member and fulfilled its obligations under the contract by providing necessary medical services to the Iron Workers' member.

43. Iron Workers breached the agreement with Miriam by refusing to pay for the medical services provided to Mr. Doe.

WHEREFORE, Plaintiffs demand full judgment against Defendant, Iron Workers on Count II granting damages together with attorneys' fees, interest, costs and such other and further relief as this Court shall deem just and proper.

## COUNT III
## BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING
## (HCVM)

44. Plaintiffs repeat and make a part hereof each and every allegation set forth in Paragraphs 1-43 of this Amended Complaint.

45. By virtue of the Reimbursement Agreement, HCVM had a duty of good faith and fair dealing toward the PSO and Miriam.

46. By its actions described above, HCVM has breached its duty of good faith and fair dealing toward Miriam and the PSO.

47. As a result of HCVM's breach of its duty of good faith and fair dealing, the PSO and Miriam have been damaged.

WHEREFORE, PSO and Miriam demand final judgment against HCVM on Count III granting damages together with attorney's fees, interest, costs and such further relief as this Court shall deem just and proper.

**COUNT IV**
**BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING**
**(IRON WORKERS FUND)**

48. Plaintiffs repeat and make a part hereof each and every allegation set forth in Paragraphs 1-47 of this Amended Complaint.

49. By virtue of the Reimbursement Agreement between HCVM and PSO, as well as the agreement between HCVM and the Iron Workers, Iron Workers had a duty of good faith and fair dealing toward the PSO and Miriam.

50. By virtue of the fact that Ullicare, on behalf of Iron Workers, approved and authorized John Doe's hospitalization and the services to be provided to him by Miriam, Iron Workers had a duty of good faith and fair dealing toward the PSO and Miriam.

51. Iron Workers led PSO and Miriam to believe that John Doe was a member of Iron Workers and therefore, eligible to receive discounted services at Miriam for which Miriam would be paid.

52. Iron Workers approved and authorized the healthcare services to be rendered to John Doe by Miriam and led Miriam to believe that such services would be paid for pursuant to the Reimbursement Agreement entered into between PSO and HCVM on behalf of Iron Workers.

53. By virtue of these actions, Iron Workers had a duty of good faith and fair dealing toward PSO and Miriam.

54. Iron Workers has failed to compensate Miriam for the services rendered to its member pursuant to the agreement entered into on behalf of Iron Workers.

55. As a result of its actions described above, Iron Workers has breached its duty of good faith and fair dealing toward Miriam and the PSO.

56. As a result of Iron Workers breach of its duty of good faith and fair dealing, the PSO and Miriam have been damaged.

WHEREFORE, PSO and Miriam demand final judgment against Iron Workers on Count IV granting damages together with attorneys' fees, interest, costs and such further relief as this Court shall deem just and proper.

## COUNT V
## UNJUST ENRICHMENT
## (HCVM AND IRON WORKERS)

57. The PSO and Miriam repeat and make a part hereof each and every allegation set forth in Paragraphs 1-56 of this Amended Complaint.

58. HCVM and Iron Workers Fund have benefited from their wrongful refusal to pay for the medical services Miriam provided to John Doe.

59. HCVM and Iron Workers' failure to compensate PSO and Miriam for the value of the medical services Miriam provided to Mr. Doe has damaged PSO and Miriam.

WHEREFORE, Plaintiffs, PSO and Miriam demand final judgment against Defendants on Count V granting damages, together with attorney's fees, interest, costs and other such and further relief as this Court shall deem just and proper.

**COUNT VI**
**BOOK ACCOUNT**

60. Plaintiffs repeat and make a part hereof each and every allegation set forth in Paragraphs 1-59 of this Amended Complaint.

61. The PSO and HCVM entered into a contract whereby Miriam would provide medical services to John Doe for which Iron Workers would pay.

62. The Miriam Hospital and PSO, in good faith, complied with their obligations under the contract.

63. HCVM and Iron Workers breached the contract by failing to make the required payments.

64. As a result of the breach, PSO and Miriam have been damaged.

65. The PSO and Miriam's books and records show that the amount due and owing by HCVM and Iron Workers totals $240,571.73 exclusive of interest, costs and attorney's fees.

WHEREFORE, the PSO and Miriam demand final judgment against HCVM and Iron Workers on Count VI granting damages, together with attorney's fees, interest, costs and other further relief as this Court shall deem just and proper.

**COUNT VII**
**ATTORNEYS' FEES**

66. The PSO and Miriam repeat and make a part hereof each and every allegation set forth in Paragraphs 1-65 of this Complaint.

67. HCVM and Iron Workers are obligated to pay the aforementioned account and have no defense for failing to pay the obligation.

68. Therefore, Plaintiffs are statutorily entitled to attorney's fees pursuant to R.I.G.L. § 9-1-45.

WHEREFORE, the PSO and Miriam demand final judgment against HCVM and Iron Workers on Count VII granting damages, together with attorneys' fees, interest, costs and further relief as this Court shall deem just and proper.

**COUNT VIII**
**NEGLIGENT MISREPRESENTATION**
**(HCVM)**

69. The PSO and Miriam repeat and make a part hereof each and every allegation set forth in paragraphs 1-68 of this Amended Complaint.

70. HCVM had a duty to accurately portray its intentions to the PSO and Miriam regarding the eligibility of John Doe to receive services at Miriam pursuant to the Reimbursement Agreement.

71. HCVM represented to PSO and Miriam that there was an agreement between HCVM and Iron Worker for discounted services for Iron Workers employees and members to receive healthcare services at Miriam, and that Iron Workers would pay the discounted rates for Iron Workers employees and members to receive medical services at Miriam.

72. HCVM represented to PSO and Miriam that John Doe was eligible for discounted services at Miriam because he was a member of Iron Workers and therefore, covered by the agreement between HCVM and Iron Workers.

73. HCVM represented to PSO and Miriam that Iron Workers was an employer group covered by the relationship between the Plaintiffs and HCVM for discounted services at Miriam.

74. HCVM sent documentation to PSO listing Iron Workers as an employment group covered by the agreement between Plaintiffs and HCVM.

75. PSO provided such documentation to Miriam and Miriam relied upon such documentation in rendering healthcare services to John Doe.

76. HCVM, on numerous occasions, sent documentation to PSO indicating that Iron Workers' members were eligible for discounted services rendered by Miriam pursuant to the Reimbursement Agreement between HCVM and PSO.

77. HCVM never provided information to the PSO or Miriam that John Doe or Iron Workers were not eligible for services rendered by Miriam to HCVM employer groups pursuant to the Reimbursement Agreement.

78. HCVM represented to PSO and Miriam that it had a written agreement with Iron Workers that required Iron Workers to pay for medical services rendered to Iron Workers members pursuant to the Reimbursement Agreement between HCVM and PSO.

79. At the time that HCVM made these statements and representations to the Plaintiffs, it knew or should have known that it did not have a written agreement between HCVM and Iron Workers, and that Iron Workers would refuse to pay Miriam for services rendered to its member pursuant to the agreement.

80. At the time that HCVM made the statements and representation set forth above to Plaintiffs, it knew or should have known that it did not intend to comply with those representations as it did not have a written agreement with Iron Workers, in violation of its agreement with PSO.

81. HCVM further represented to Miriam that John Doe was eligible for services and authorized the provision of such services.

82. The plaintiffs relied upon HCVM's statements and representations and provided medical services to John Doe.

83. By its actions and conduct, HCVM negligently represented the aforementioned information to the Plaintiffs, thereby breaching its duty to the Plaintiffs.

84. As a result of HCVM's negligent misrepresentation, Plaintiffs have been damaged.

WHEREFORE, the PSO and Miriam demand final judgment against HCVM on Count VIII granting damages, together with attorneys' fees, interest, costs and further relief as this Court shall deem just and proper.

## COUNT IX
## NEGLIGENT MISREPRESENTATION
## (IRON WORKERS)

85. The PSO and Miriam repeat and make a part hereof each and every allegation set forth in paragraphs 1-84 of this Amended Complaint.

86. Iron Workers had a duty to accurately portray its intentions to the Plaintiffs regarding eligibility of John Doe for services rendered to him by Miriam.

87. On many occasions, Iron Workers represented to the Plaintiffs that John Doe was eligible for the discounted services provided at Miriam pursuant to the contract between Plaintiffs and HCVM.

88. The utilization review company hired by Iron Workers authorized Miriam to provide services to John Doe as a member of Iron Workers and represented to Miriam that he was eligible for discounted services pursuant to the agreement between the PSO and HCVM.

89. Iron Workers represented to the Plaintiffs that its member was covered by the agreement between HCVM and Iron Workers and that it would pay Miriam for the services rendered to John Doe pursuant to the agreement between Plaintiffs and HCVM.

90. Iron Workers paid a portion of the bill for services rendered, even though it knew that it did not have a signed contract in effect between Iron Workers and HCVM.

91. By paying a portion of the bill and representing to the Plaintiffs that Mr. Doe was eligible for discounted services rendered, Iron Workers knew that it did not have a signed contract in effect between Iron Workers and HCVM and that it would not pay for services rendered pursuant to the contract between the Plaintiffs and HCVM.

92. At the time Iron Workers made the statements and representations set forth above, it knew or should have known that it did not intend to comply with those representations.

93. Plaintiffs relied upon Iron Workers' statements and misrepresentations.

94. By its actions and conduct, Iron Workers negligently represented the aforementioned information to the Plaintiffs, thereby breaching its duty to the Plaintiffs.

95. As a result of Iron Workers' negligent misrepresentation, Plaintiffs have been damaged.

WHEREFORE, the PSO and Miriam demand final judgment against HCVM and Iron Workers Fund on Count IX granting damages, together with attorneys' fees, interest, costs and further relief as this Court shall deem just and proper.

**COUNT X**
**FRAUDULENT MISREPRESENTATION**
**(HCVM)**

96. The PSO and Miriam repeat and make a part hereof each and every allegation set forth in paragraphs 1-95 of this Amended Complaint.

97. On many occasions, HCVM represented to the Plaintiffs that Iron Workers Fund was an employer group covered by the contract in effect between the Plaintiffs and HCVM.

98. On many occasions, HCVM provided information and documentation to the Plaintiffs indicating that Iron Workers was an employer group covered by the discounted agreement between Plaintiffs and HCVM.

99. At the time of Mr. Doe's admission to Miriam, HCVM provided information to the Plaintiffs that Mr. Doe was eligible for services as a member of Iron Workers and covered by the contract between Plaintiffs and HCVM.

100. At all material times hereto, HCVM represented to the Plaintiffs that it had a valid and binding contract with Iron Workers for the provision of services to its members at Miriam and that Iron Workers would pay for those services in accordance with the Reimbursement Agreement.

101. On numerous occasions, HCVM specifically stated to the Plaintiffs that John Doe was eligible for discounted services rendered by Miriam and that Iron Workers was responsible for payment of the services rendered pursuant to the contract between PSO and HCVM.

102. The statements set forth above constitute representations of material facts.

103. The Plaintiffs reasonably relied upon HCVM's representations of material facts when it provided services to John Doe.

104. At the time that HCVM made the representations of material facts, HCVM knew that these representations of material facts were false because it did not have a

written contract with Iron Workers, and HCVM intentionally misrepresented these material facts for the purpose of inducing Miriam to provide services to John Doe.

105. As a result of HCVM's conduct and actions, Plaintiffs have been damaged.

WHEREFORE, the PSO and Miriam demand final judgment against HCVM on Count X granting damages, together with attorneys' fees, interest, costs and further relief as this Court shall deem just and proper.

**COUNT XI**
**FRAUDULENT MISREPRESENTATION**
**(IRON WORKERS)**

106. The PSO and Miriam repeat and make a part hereof each and every allegation set forth in paragraphs 1-105 of this Amended Complaint.

107. On many occasions, Iron Workers represented that its members were covered under the agreement between Plaintiffs and HCVM for discounted medical services.

108. In addition, on many occasions, Iron Workers and its representative Ullicare represented to the Plaintiffs that John Doe was a member of Iron Workers and therefore, eligible for discounted services pursuant to the contract between Plaintiffs and HCVM.

109. The statements set forth in the preceding paragraphs constitute representations of material facts.

110. Plaintiffs reasonably relied upon Iron Workers' representations of material facts when it provided services to John Doe.

111. Despite these representations of material facts, Iron Workers knew that it did not have a written contract with HCVM and had no intention to pay Miriam the

amounts owed for services according to the Reimbursement Agreement between Plaintiffs and HCVM.

112. At the time that Iron Workers made the representations of material facts, Iron Workers knew that these representations of material facts were false, and Iron Workers intentionally misrepresented these material facts for the purpose of inducing Miriam to render services to John Doe.

113. At the time that these representations of material facts were made to the Plaintiffs, Iron Workers knew that these representations of material facts were false because it did not have a signed contract in effect between it and HCVM and had no intention to pay Miriam pursuant to the Reimbursement Agreement.

114. Nonetheless, Iron Workers represented to the Plaintiffs that John Doe was eligible for discounted services, knowing that he was not, to induce Miriam to provide services to him, and then refused to pay for such services on the basis that there was no such contractual relationship.

115. As a result of Iron Workers' conduct and actions, Plaintiffs have been damaged.

WHEREFORE, the Plaintiffs demand final judgment against Iron Workers on Count XI granting damages, together with attorney's fees, interest, costs and other further relief as this Court shall deem just and proper.

Lifespan Physicians Professional Service
Organization and The Miriam Hospital
By their Attorney,

Linn F. Freedman, Esq. (#4778)
Nixon Peabody, LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Telephone: 401-454-1108
Facsimile: 866-807-6614

Dated: March 20, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of March, 2006, I caused a true copy of the within First Amended Complaint to be sent via first-class mail to:

Matthew T. Oliverio, Esq.
Oliverio & Marcaccio, LLP
55 Dorrance Street, Suite 400
Providence, RI 02903

Michael J. Lepizzera, Jr., Esq.
Lepizzera and Laprocina
301 Metro Center Blvd., #102
Warwick, RI 02886