**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**LIFESPAN PHYSICIANS PROFESSIONAL SERVICE)**
**ORGANIZATION and THE MIRIAM HOSPITAL )**
**)**
**V. ) C.A. NO. 05-239S**
**)**
**HEALTHCARE VALUE MANAGEMENT, INC. and )**
**IRON WORKERS DISTRICT COUNCIL OF NEW )**
**ENGLAND WELFARE FUND )**

**DEFENDANT IRON WORKERS DISTRICT COUNCIL OF NEW ENGLAND WELFARE FUND'S MOTION TO COMPEL THE PLAINTIFFS TO RESPOND TO ITS FIRST SET OF INTERROGATORIES**

Now comes the defendant, Iron Workers District Council of New England Welfare Fund (hereinafter "Iron Workers"), and pursuant to *Rule 37(a)(2)(b)* of the *Federal Rules of Civil Procedure* asks this Honorable Court for an order compelling the Plaintiffs, Lifespan Physicians Professional Service Organization (hereinafter "LPO") and The Miriam Hospital (hereinafter "TMH") to answer interrogatories nos. 14 through 16, 19 and 20. In support of said motion, the defendant submits the attached memorandum of law.

Defendant, Iron Workers District
Council of New England Welfare Funds
By its attorneys,

Michael J. Lepizzera, Jr., #4995
Christian C. Potter, #5359
Lepizzera and Laprocina
301 Metro Center Blvd., #102
Warwick, Rhode Island 02886
(401) 739-7397
(401) 384-6950

## CERTIFICATION OF ATTORNEY

I, Christian C. Potter, #5359, hereby certify that pursuant to Rule 37(a)(2) of the Federal Rules of Civil Procedure, I made a good faith effort with opposing counsel to resolve the discovery dispute raised by this motion.

## CERTIFICATION

I certify that on this 28th day of April, 2006 a true and accurate copy of the within was mailed to:

Linn Foster Freedman, Esquire
Nixon Peabody, LLP
One Citizens Plaza
Providence, Rhode Island 02903

Matthew T. Oliverio, Esquire
OLIVERIO & MARCACCIO, LLP
55 Dorrance Street, Suite 400
Providence, RI 02903

CCP
______________________________

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LIFESPAN PHYSICIANS PROFESSIONAL SERVICE** | ) | |
| **ORGANIZATION and THE MIRIAM HOSPITAL** | ) | |
| | ) | |
| **V.** | ) | **C.A. NO. 05-239S** |
| | ) | |
| **HEALTHCARE VALUE MANAGEMENT, INC. and** | ) | |
| **IRON WORKERS DISTRICT COUNCIL OF NEW** | ) | |
| **ENGLAND WELFARE FUND** | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT IRON WORKERS DISTRICT COUNCIL OF NEW ENGLAND WELFARE FUND'S MOTION TO COMPEL THE PLAINTIFFS TO RESPOND TO ITS FIRST SET OF INTERROGATORIES**

Now comes the defendant, Iron Workers District Council of New England Welfare Fund (hereinafter "Iron Workers"), and pursuant to *Rule 37(a)(2)(b)* of the *Federal Rules of Civil Procedure* asks this Honorable Court for an order compelling the Plaintiffs, Lifespan Physicians Professional Service Organization (hereinafter "LPO") and The Miriam Hospital (hereinafter "TMH") to answer interrogatories nos. 14 through 16, 19 and 20. In support of said motion, the defendant submits this memorandum of law.

**FACTUAL BACKGROUND**

The defendant Iron Workers District Council of New England Welfare Fund ("the Iron Workers Fund") is a non-profit trust fund organized under the laws of the Commonwealth of Massachusetts. As an ERISA trust fund, it provides for the payment of medical benefits to its eligible participants.

This matter arises out of a participant in an Iron Workers Fund, "John Doe", as he is identified in plaintiffs' complaint, who received medical services from the plaintiff

Miriam Hospital (hereinafter "TMH"). John Doe received medical services at TMH from November 13, 2003 through November 27, 2003. The plaintiffs have alleged that his medical care totaled $598,057.80. TMH initiated contact with the Iron Workers Fund by mailing the alleged medical bills incurred by "John Doe" to HCVM. Iron Clad, Iron Workers Fund's in-house claims administrator, received the bill from HCVM. The bill received by Iron Clad was in the amount of $598,057.80 and was not an itemized bill; it was just a printout of the screen on the patient's account. Iron Clad sent this bill to its vendor for an audit.

On March 1, 2004, Iron Clad made payment to the plaintiffs in the amount of $36,279.43 for the room and board charges, as well as ancillary charges (with the exception of Pharmacy and Blood Storage). This left a balance of $883.67, with the preferred provider organization ("PPO") discount, on these charges and a pending charge of $411,380.25 for which Iron Clad requested an itemized bill. After some time, Iron Clad received an itemized bill from the plaintiffs. After reviewing the itemized bill, Iron Clad found some discrepancies and requested the medical records from the plaintiffs to support the charges on the bill.

In May 2004, Anne Fini, Director of Claims at Iron Clad, received a request for immediate payment from Judy Randall, a representative of the plaintiffs. Ms. Fini explained to Ms. Randall that she needed the medical records in order to review the bill. In settlement of this issue, Iron Clad agreed to pay $200,000.00 to the plaintiffs in return for the release of the medical records.

The plaintiffs forwarded the medical records and the itemized bill to Iron Clad. However, these records were incomplete in as much as they failed to document the

number of units or the quantitative amounts for the specific drug treatments. Without this unit detail, it was impossible for Iron Clad to determine what was being charged for each of the two drug treatments.

At this time, Susan Oakes, the Director of Iron Clad's vendor's medical review department, began her numerous attempts to determine the unit pricing information. However, she was unable to find out that information through her contacts within the TMH. In order to try an alleviate this problem, James Langan, counsel for Iron Workers Fund, sent Ms. Randall a letter on August 26, 2004 documenting that the Iron Workers Fund could not make any other payments until the medical records that were agreed upon were received.

On or about October 12, 2004, Judy Randall sent a letter to Iron Workers Fund's counsel. This letter was the first correspondence from the plaintiffs since the summer of 2004 and did not include the medical information that was promised. In response to that letter, Iron Worker Fund's counsel responded by sending a letter to the plaintiffs once again stating that Iron Workers Fund would not make any further payments until it received the following information: "the actual product name for Factor VIII and for Gammagard, along with their respective NDC #'s and a complete blood bank record showing the substance administered with its dosages on each respective day."

Almost three months later, Iron Workers Fund received a response to its November 24, 2004 letter containing the requested information. The information provided by the plaintiffs proved exactly what Iron Workers Fund had anticipated. The plaintiffs charged approximately 300% over the reasonable and customary fee for one medication and 3,345% over the reasonable and customary fee for the second medication.

Therefore, the defendant has refused to pay the alleged remaining balance and has filed a counterclaim against the plaintiffs based on the theories of quantum meruit and unjust enrichment.

## LEGAL ISSUES

In the complaint, the plaintiffs have alleged that they entered into a contract with the Defendant, Health Care Value Management (hereinafter "HCVM") wherein HCVM members agreed to pay LPO providers, including TMH, for services rendered to their employee members. LPO further alleged that Iron Workers was a member of HCVM and had entered into a contract with HCVM to pay for the services referred to in the contract between the LPO and HCVM to pay the total amount of the bill. Based on these allegations, LPO has sought to recover medical expenses incurred by John Doe, a member of Iron Workers, who received medical treatment services at the TMH.

The plaintiffs' complaint alleges that HCVM and Iron Workers entered into a contract that obligates Iron Workers to meet the terms and conditions of the contract entered into between the LPO and HCVM. Iron Workers asserts that it does not have a contractual relationship with HCVM. Iron Workers did not enter into a contract with HCVM as alleged in paragraph 6 of the plaintiff's complaint. Said paragraph states "upon information and belief, HCVM entered into a contractual relationship with Iron Workers wherein Iron Workers Fund agreed to compensate TMH for services provided to its members in accordance with terms and conditions of an Agreement entered into between HCVM and LPO on behalf of TMH." This paragraph is completely unsubstantiated and untrue.[1] HCVM did not have any authority to act on behalf of the

[1] HCVM in its response to discovery requests has been unable to produce a signed contract between HCVM and Iron Workers Fund.

Iron Workers Fund or bind Iron Workers Fund to any action. HCVM did charge to re-price provider bills (hospitals, doctors, etc.) for those Iron Worker Fund participant bills submitted by TMH directly to HCVM. The payment by the Iron Workers Fund is always subject to the terms of the plan of benefits, such as the types of services for which it will pay and the exclusions on payment for services that are more than the reasonable and customary charges.

Contrary to industry-standard practice in claims payment and administration, the plaintiffs failed to utilize cost-saving managed care vendor procedures during John Doe's hospital stay; the plaintiffs refused to cooperate with the managed care vendor. The plaintiffs also unnecessarily delayed in providing Iron Workers Fund with an itemized bill for the services to John Doe and certain medical records to verify the charges by the plaintiffs.

The Iron Workers Fund did not refuse to pay the plaintiffs for the services to John Doe. Iron Workers Fund paid a total of $236,673.90 towards the bill. Iron Workers Fund paid the maximum amount under the usual and customary standards, although such amount was less than the discounted bill amount. As a result, Iron Workers Fund paid $65,304.40 more than the reasonable and customary amount for the two injectable medications administered to John Doe. Iron Workers Fund paid 100% of the discounted bill for all of the other services provided to John Doe, including those charges to actually administer the medications.

There is an absence of a contractual relationship between the plaintiffs and the Iron Workers. Iron Workers has no contractual obligation to pay in full the HCVM discounted amount of the hospital bill incurred by John Doe or any other participant.

Therefore, based on the defendant's counterclaim for quantum meruit and unjust enrichment, the plaintiffs must provide evidence that the charges that they are seeking are reasonable.

**INTERROGATORIES IN ISSUE**

13. Please identify all persons who are responsible for determining the amount charged for the drug Factor VIII that was administered to John Doe at TMH from November 13, 2003 to November 27, 2003.

Answer 13. Objection insofar as the Interrogatory seeks information that is not likely to lead to the discovery of admissible evidence. Iron Workers agreed to pay 79.88% of the charges and it has failed to do so. There are no provisions in the contract that provides a payor with the opportunity to obtain confidential business records relating to the charges.

14. Please identify all persons who are responsible for determining the amount charged for the drug Gammagard that was administered to John Doe at TMH from November 13, 2003 to November 27, 2003.

Answer 14. Objection insofar as the interrogatory seeks information that is not likely to lead to the discovery of admissible evidence. Iron Workers agreed to pay 79.88% of the charges and it has failed to do so. There are no provisions in the contract that provides a payor with the opportunity to obtain confidential business records relating to the charges.

15. With respect to the drug Factor VIII administered to John Doe at TMH from November 13, 2003 to November 27, 2003, please state the following:

A. The cost that the plaintiffs paid to purchase said drugs,
B. The reasonable and customary fee charged by the plaintiffs,
C. The reasonable and customary fee charged by the industry

Answer 15. Objection insofar as the Interrogatory seeks information that is not likely to lead to the discovery of admissible evidence and seeks a legal conclusion. In addition, the Interrogatory seeks confidential business practices and information from the Plaintiffs. Finally, Plaintiffs contend that the amount charged by the Plaintiffs was charged to every patient who received such blood product. The Plaintiffs do not have any knowledge concerning what the "industry" charges for Factor VIII.

16. With respect to the drug Gammagard administered to John Doe at TMH from November 13, 2003 to November 27, 2003, please state the following:

A. The cost that the plaintiffs paid to purchase said drugs,
B. The reasonable and customary fee charged by the plaintiffs,
C. The reasonable and customary fee charged by the industry

Answer 16. Plaintiffs object to the Interrogatory as it seeks information that is not likely to lead to the discovery of admissible evidence and seeks a legal conclusion. In addition, Plaintiffs object as it seeks confidential business information to which the Defendant is not entitled. Finally, Plaintiffs state that the amount charged by the Plaintiffs for Gammagard was the amount charged by the Plaintiffs to all patients. The charge was agreed to by Iron Workers, through its preferred provider network with HCVM and the amount Iron Workers was responsible to pay was 79.88% of the charge. The Plaintiffs do not have knowledge concerning the fee charged by the "industry" for Gammagard.

19. Please identify each and every person that is employed by or who is a representative of the plaintiffs that has knowledge of or who is in possession of any contracts between the plaintiffs and the Iron Workers Fund and include as part of your answer

(a) the name, address and telephone number of each and every person having knowledge of said facts identifying specifically what you believe each person identified knows;
(b) a description of the Agreement which you claim relates to, concerns, supports, or evidences the facts set forth above;
( c ) the name, address and telephone number of the person who is in possession of the Agreement identified above in subparagraph ( b ).

Answer 19. The contract between the PSO on behalf of The Miriam Hospital entered into with HCVM on behalf of Iron Workers has been produced in this matter. In addition, there is an agreement between HCVM and Iron Workers that has also been produced. Iron Workers' members have received services from The Miriam Hospital as a member of HCVM's preferred provider network since 1998 and continues to receive the benefit of the agreement to this date.

20. Please identify each and every person that is employed by or who is a representative of the plaintiffs that has knowledge of or who is in possession of the "Reimbursement Agreement" and include as part of your answer:

(a) the name, address and telephone number of each and every person having knowledge of said facts identifying specifically what you believe each person identified knows;
(b) a description of the Agreement which you claim relates to, concerns, supports, or evidences the facts set forth above;
( c ) the name, address and telephone number of the person who is in possession of the Agreement identified above in subparagraph ( b ).

Answer 20. Please see Answer to Interrogatory Number 19.

**RELEVANCE OF INTERROGATORIES**

The plaintiffs have brought this complaint against the defendant Iron Workers for its alleged failure to pay for medical services that were provided to John Doe. In support of their argument, the plaintiffs assert that there is a contractual agreement between the defendant Iron Worker and the defendant HCVM that states that Iron Workers agreed to pay 79.88% of the charges to TMH and it has failed to do so. However, when asked to produce the executed contract, the plaintiffs and the other defendant, HCVM, are unable to do so.

In its answer to the plaintiffs' amended complaint, Iron Workers has denied the existence of written and executed contract between Iron Workers and HCVM. Further, Iron Workers has asserted a counterclaim against the plaintiffs for quantum meruit and unjust enrichment with respect to the charges associated with the medical services and blood products provided to John Doe.[2] In drafting its discovery, Iron Workers has requested documents evidencing the plaintiffs' costs for blood products, Gammagard and Factor VIII. This information is relevant to Iron Workers' counterclaim for quantum meruit and unjust enrichment. *Rule 26(b)(1)* states that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery…". Further, the First Circuit has defined the term "relevant" to allow parties to obtain information which encompasses any matter that could reasonably lead to the discovery of admissible evidence on any issue that is or may be in the case. Klonski v. Mahlab, 156 F.3rd 255 (1st Cir. 1988), cert den. 526 U.S. 1039.

[2] The Plaintiffs had originally filed a claim for quantum meruit in its complaint. The defendant generated its discovery based on this claim and Magistrate Almond has stated that he believed that the issue of how much The Miriam Hospital paid for the medications would certainly be an issue for discovery. However, the plaintiffs have amended their complaint to remove the quantum meruit claim, but the defendant has filed a counterclaim against the plaintiffs for quantum meruit and unjust enrichment.

Interrogatory numbers 13 through 16 request information concerning the costs that the Plaintiffs incurred in purchasing the blood products, Gammagard and Factor VIII that were administered to John Doe. The very same charges that are in dispute in this matter. The plaintiffs have refused to answer any questions concerning their costs for the blood products that they have billed the patient for whom the Iron Workers provide medical coverage. In support of their objections, the plaintiffs rely on two arguments. First, the plaintiffs use a blank objection stating that "the interrogatory seeks information that will not lead to the discovery of admissible evidence". The federal courts have been very clear that this statement "is not adequate to voice a successful objection to an interrogatory… a showing of how each question is not relevant is required." Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982). The defendant asserts that based on the First Circuit definition of "relevant", the information sought is relevant to the issues of the case because it is required in the Iron Worker's ERISA plan to pay only the reasonable and customary charges submitted by any provider and the defendant's counterclaim for quantum meruit and unjust enrichment. Based on this assertion, the information sought by the defendants is discoverable.

Second, the plaintiffs state "*Iron Workers agreed to pay 79.88% of the charges and it has failed to do so. There are no provisions in the contract that provides a payor with the opportunity to obtain confidential business records relating to the charges*". Once again, the plaintiffs have not been able to produce the contract that they continuously rely upon. Iron Workers denies the existence of a written and executed contract and has filed a counterclaim against the plaintiffs for quantum meruit and unjust enrichment. The First Circuit has held that discovery is designed to define and clarify the

issues and is not limited to the merits of a case. Klonski v. Mahlab, 156 F.3rd 255 (1st Cir. 1988), cert den. 526 U.S. 1039. Therefore, the defendant is entitled to discover the value of plaintiffs' claims against Iron Workers.

For the point of establishing a hypothetical situation, let's assume the following facts: (1) the plaintiffs can produce a contract; (2) the contract obligated "*Iron Workers to pay 79.88% of the charges*"; (3) Iron Workers refused to pay the plaintiffs based on its assertion that the charges sought by the plaintiffs are completely unreasonable; (4) the contract is silent as to what the plaintiffs would charge for blood products; (5) the plaintiffs charged Iron Workers $543,936.00 for two blood products. Is it unreasonable for Iron Workers to request that the plaintiffs provide evidence of their cost to support the reasonableness of their charges for the two blood products? If one continues with the hypothetical situation, what would happen if the plaintiffs had charged the defendant one million ($1,000,000.00) dollars for two blood products that were provided to John Doe? Would the court allow the plaintiffs to proceed with their case and not have to present evidence that the one million ($1,000.000.00) dollars was reasonable? Should the Iron Workers have to pay a percentage of whatever the plaintiffs charged without being permitted to discover the underlying reasonableness of the charges? The fact that a contract exists does not give the plaintiffs the right to unilaterally charge the defendant an unreasonable amount. Without a meeting of the minds as to a material aspect of the contract, that is the price for the two blood products, the court must force the plaintiffs to provide evidence as to the reasonableness of their charges

As an example, imagine that a homeowner's heater breaks in the middle of winter. The homeowner's house is freezing and he has small children in his family. It is

an absolute emergency and he contacts a repairman and authorizes him to do whatever it takes to restore heat to his house. The repairman restores heat to the house and gives the homeowner a bill for $50,000. Is it reasonable to force the home owner to pay that sum? Shouldn't the repairman need to substantiate his charges? This is no different than the situation in our case. The Plaintiffs have charged more than $543,936.00 for two blood products. The Plaintiffs must substantiate these charges. They cannot take advantage of an emergency medical situation and charge whatever they feel is reasonable. Therefore, the information sought is directly relevant to the defenses of Iron Workers and reasonably calculated to lead to the discovery of admissible evidence.

Interrogatories numbers 19 and 20 ask for names and addresses of individuals who are employed by the plaintiffs who have personal knowledge or who are in possession of any contracts between the plaintiffs and Iron Workers. The plaintiffs have failed to respond to this question. The answers that they provided are completely unresponsive. Iron Workers asks this Court to order the plaintiffs to respond to the questions as presented.

## CONCLUSION

Wherefore, for the above stated reasons, Iron Workers respectfully requests this Honorable Court grant its motion to compel.

Defendant, Iron Workers District
Council of New England Welfare Funds
By its attorneys,

Michael J. Lepizzera, Jr., #4995
Christian C. Potter, #5359
Lepizzera and Laprocina
301 Metro Center Blvd., #102
Warwick, Rhode Island 02886
(401) 739-7397
(401) 384-6950

**CERTIFICATION**

I certify that on this 28th day of April 2006 a true and accurate copy of the within was mailed to:

Linn Foster Freedman, Esquire
Nixon Peabody, LLP
One Citizens Plaza
Providence, Rhode Island 02903

Matthew T. Oliverio, Esquire
OLIVERIO & MARCACCIO, LLP
55 Dorrance Street, Suite 400
Providence, RI 02903