UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIFESPAN PHYSICIANS PROFESSIONAL SERVICE ORGANIZATION and THE MIRIAM HOSPITAL, Plaintiffs | : | |
| v. | : | C.A. No. 05-239S |
| HEALTHCARE VALUE MANAGEMENT, INC. and IRON WORKERS DISTRICT COUNCIL OF NEW ENGLAND WELFARE FUND, Defendants | : | |

PLAINTIFFS' OBJECTION TO DEFENDANT, IRONWORKERS DISTRICT COUNCIL OF NEW ENGLAND WELFARE FUND'S MOTION TO COMPEL

NOW COME PLAINTIFFS, Lifespan Physicians Professional Service Organization ("PSO") and The Miriam Hospital ("TMH") and object to Defendant, Ironworkers District Council of New England Welfare Fund's ("Ironworkers") Motion to Compel.

The reasons for the Objection are more fully set forth in the attached Memorandum in Support of Objection to Motion to Compel.

NIXON PEABODY LLP

By: Linn F. Freedman (By Steven Richard #4403)

Linn F. Freedman (#4778)
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Telephone: (401) 454-1108
Fax: (866) 807-6614

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of May, 2006, I caused a true copy of the within Objection to Iron Workers' Motion to Compel to be sent via first-class mail and facsimile to:

Matthew T. Oliverio, Esq.
Oliverio & Marcaccio, LLP
55 Dorrance Street, Suite 400
Providence, RI 02903

Michael J. Lepizzera, Jr., Esq.
Lepizzera and Laprocina
301 Metro Center Blvd., #102
Warwick, RI 02886

Susan Guerremont

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIFESPAN PHYSICIANS PROFESSIONAL SERVICE ORGANIZATION and THE MIRIAM HOSPITAL, Plaintiffs | : | |
| v. | : | C.A. No. 05-239S |
| HEALTHCARE VALUE MANAGEMENT, INC. and IRON WORKERS DISTRICT COUNCIL OF NEW ENGLAND WELFARE FUND, Defendants | : | |

MEMORANDUM IN SUPPORT OF OBJECTION TO IRON WORKERS DISTRICT COUNCIL OF NEW ENGLAND WELFARE FUND'S MOTION TO COMPEL

Plaintiffs Lifespan Physicians Professional Service Organization ("PSO") and The Miriam Hospital ("TMH") hereby submit this Memorandum in Support of Objection to Iron Workers District Council of New England Welfare Fund's ("Iron Workers") Motion to Compel.

**THE FACTS**

The facts of this matter are relatively simple. In 1998, Defendant Healthcare Value Management, Inc. ("HCVM") negotiated a preferred provider agreement with the PSO on behalf of TMH. The purpose of the preferred provider agreement was for employer groups to band together to attempt to negotiate discounted rates for medical services for their employees. Employers would become a member of HCVM, who would negotiate a discounted contract rate for medical services to be provided at certain networks of hospitals and providers. HCVM has multiple employer groups which, through the discounted preferred provider agreement, obtained benefits from this arrangement.

In 1998, HCVM and PSO entered into a preferred provider agreement for the employer groups who were members of HCVM to obtain discounted medical services at Lifespan

Hospitals, including TMH. Pursuant to the contract in effect between HCVM and PSO, HCVM was required to enter into contracts with the member employer groups which provided that the employer payors were obligated to pay the rate negotiated in the contract and to pay the percentages of charges within thirty (30) days.

Commencing in 1998 and through 2005, HCVM provided lists of employer groups who were members of the preferred provider agreement and therefore, eligible for the discounted medical services at TMH. From 1998 through 2005, HCVM represented to TMH that Iron Workers and/or Iron Clad was a member of the preferred provider agreement and therefore, eligible for discounted medical services at TMH. In fact, from 1998 through 2003, when John Doe was admitted into TMH, Iron Workers members received medical services at TMH pursuant to the contract.

The arrangement between Plaintiff and Defendants was non-eventful until November of 2003. At that time, John Doe was admitted into TMH from the emergency room. At the time of admission, John Doe indicated to TMH that he was an employee of Iron Workers. He also signed an assignment of benefits form in favor of TMH. TMH employees confirmed Mr. Doe's eligibility as a member of Iron Workers, and obtained authorization for a three (3) day stay from Iron Workers' utilization review company, Ullicare. Thereafter, authorization for a fourteen (14) day stay was authorized by Ullicare. Mr. Doe received medical services at TMH from November 13, 2003 through November 27, 2003.

During Mr. Doe's admission and stay at TMH, he was being treated for a diagnosis which required treatment with Factor VIII and Gamaguard. Such treatment was specifically ordered by his treating physicians.

Following Mr. Doe's discharge from TMH, TMH, pursuant to the contract in effect between TMH and HCVM, forwarded the charges to HCVM for payment. Pursuant to the

specific contract terms, Iron Workers was responsible to pay 79.88% of the charges on the bill. HCVM, as it had done in the past with Iron Workers, re-priced the invoice pursuant to the contract, and forwarded it to Iron Workers for payment. Up to this point in time, everything was done according to the contract terms.

Although Iron Workers in the past has paid TMH according to the contract, it refused to do so in this instance due to the fact that Mr. Doe's medical bill was expensive. Iron Workers paid a portion of the bill, but still owes TMH for a substantial part of the charges pursuant to the contract.

**INTERROGATORIES**

Iron Workers has moved to compel answers to interrogatories 14-16, 19 and 20.

Interrogatory 14 - 16 seeks the identity of those responsible for determining the amount charged for the drug Gamaguard and information relating to costs of Factor VIII and Gamguard. Plaintiffs have objected to the interrogatories as they are irrelevant to the complaint as this matter is a breach of contract claim. Defendants have alleged that TMH overcharges for these two products and that the charges are not "reasonable and customary." Unfortunately, the Defendants did not contract with TMH to pay "reasonable and customary" charges, nor has Defendants or anyone else for that matter indicated what is considered "reasonable and customary" for these products. Determination of charges in a hospital system such as Lifespan is dependant upon numerous factors and budgetary processes. Admittedly the Defendants are not satisfied with the charges for the two (2) blood products and have challenged the charges. However, Defendants specifically contracted to pay percentages of the charges and did not negotiate with the hospital concerning the specific charges for products or services nor to pay based upon reasonable and customary charges. In fact, none of the Payors, including Blue Cross, United Health Care, Neighbor Health Plan or any other payor negotiates preferred provider

agreements or any other reimbursement agreements based upon actual costs. The actual costs of products is confidential business information for which payors are not entitled to receive. They can negotiate a lower rate on the percentage of charges, but it is absolutely not within the industry standard to attempt to obtain cost information from hospitals when a contract has already been entered into and followed for eight (8) years. Costs associated with products and services are determined on a systems wide basis and the charges are identical to each patient and payor no matter who the patient is or who the payor is. For instance, payors are able to negotiate certain rates and discounts off of charges based upon volume of patients being seen at Lifespan hospitals. However, those payors have never requested, nor are they entitled to the confidential cost information of the hospital and the basis for such charges.

The hospitals in the State of Rhode Island, including TMH, are obligated to provide medical services to any patient who walks through its door. Such is accounted for in determining charity care for uninsured patients. In addition, TMH is a teaching hospital and is part of the resident training program at Brown University. All of these factors are determined in the budget process to determine charges of all services and products provided to patients. The most important point is the fact that Iron Workers was not charged any differently than any other patient or payor, whether a self-pay patient or a large insurance company such as Blue Cross and Blue Shield of Rhode Island.

It is inappropriate for Iron Workers to attempt to obtain the confidential business information of TMH with respect to actual costs as the actual costs is not what was negotiated in the contract. Iron Workers may be dissatisfied with the percent off of the charges that HCVM negotiated on its behalf, but it can not five years later now claim that it is not a part of the contract and that TMH is charging too much for a product or service. This is a contract that was negotiated by sophisticated parties and the terms of which were specifically agreed to by Iron

Workers when it became a member of the preferred provider network. Under basic contractual principals, Iron Workers can not now allege that they are unsatisfied with the contract terms.

In addition, Iron Workers allegations that the term "reasonable and customary" is applicable in this instance are off base. The contract terms do not mention "reasonable and customary" charges. The contract terms are clear and unambiguous – Iron Workers is to pay TMH 79.88% of charges. Iron Workers has absolutely no evidence that it was charged any differently than any other payor or patient in its attempt to reduce the amount owned under a "reasonable and customary" charge is in opposite to the contract at issue. It agreed to the terms of the contract; it abided by the contract for six (6) years prior to Mr. Doe's admission and it presently has no right to challenge the charges just because it doesn't like them.

With respect to Iron Workers' allegation that it is not subject to the provider agreement, such argument is not really helpful to Iron Workers. If it now alleges that it is not subject to the preferred provider agreement, then it does not obtain the benefit of the discounted rate and is responsible for 100% of the charge. TMH would be satisfied with receiving 100% of the charges. Unfortunately, Iron Workers members' have been receiving discounted medical services at TMH since 1998. Accordingly, it appears that TMH's claim against Iron Workers will increase substantially as a result of Iron Workers' allegation that it is not subject to the preferred provider agreement. In that case, TMH is entitled to 100% of charges of each service provided to Iron Workers' members from 1998 to the present date.

**The Law**

Iron Workers does not dispute that it has been listed as a member of the HCVM network since 1998, nor that TMH has provided services to Iron Workers' members since 1998 in accordance with the preferred provider agreement. In addition, it is undisputed that Ullicare, Iron Workers' utization review company, authorized TMH to provide medical services to John

Doe for the full 14 days. Further, Iron Workers has reimbursed TMH pursuant to the discounted rates since 1998. Iron Workers has received the benefit of being a member of the preferred provider agreement. The fact that HCVM cannot locate an executed copy of the agreement does not mean that the agreement never existed. If such is true, then Iron Workers owes TMH substantially more for all of the discounts it has received over the years.

The contract in effect between Plaintiffs and HCVM is clear and unambiguous. Employer payors are responsible to pay a pre-contracted amount of charges. In this instance, the contracted discounted rate is 79.88%. The contract terms are not subject to interpretation and should be applied as written. "The clear and unambiguous language of a contract is controlling with respect to the parties' intent and governs the legal consequences of the contract provisions." Dudzik v. Leesona Corp., 473 A. 2d 762, 765 (R.I. 1994). When the parties agree to a specified contract rate, after negotiation, that rate controls and the parties are bound by that rate. Northway Decking & Sheet Metal Corp. v. Inland-Ryerson Constr. Products Co., 426 F. Supp. 417 (D.R.I. 1977). A party cannot unilaterally and materially alter the agreement reached between the parties. Allstate Drilling Co. v. Martinelli, 2004 R.I. Super. LEXIS 27 (Jan. 15, 2004). Any modification must be done after mutual agreement and in writing. Keefe v. D'Amico, 697 A. 2d 1096 (R.I. 1997). Parties are bound by the plain terms of the contract. Hilton v. Fraioli, 763 A. 2d 599 (R.I. 2000).

The case of Response Oncology, Inc. v. Blue Cross & Blue Shield of Missouri, 941 S.W. 2d 771 (Mo. App. 1997) is instructive in this matter. In that case, Blue Cross entered into a contract of insurance with patient Jabbour. Blue Cross was obligated to pay costs of treatment if the treatment was provided by a preferred provider, including high does chemotherapy ("HDC"). Mr. Jabbour was diagnosed with lymphoma and his physician recommended HDC and peripheral stem cell transplantation ("PSCT").

Blue Cross entered into a contract with the provider of HDC and PSCT – Response. Response provided the treatment and Mr. Jabbour assigned his benefits to Response for payment based upon contracted rates between Blue Cross and Response.

The dispute between the parties arose when Blue Cross did not pay the entire bill for the treatment. Response filed suit seeking the difference between its bill and the amounts paid by Blue Cross. Response alleged that the HDC was not covered by the provider agreement and therefore, Blue Cross was not entitled to a discount.

The Court found that Blue Cross sent a letter to Response confirming that HDC and PSCT were eligible for coverage but that PSCT was not specifically mentioned in the contract. However, PSCT was a vital component for Jabbour's treatment. The Court determined that the letter promised that Jabbour was covered for PSCT and Blue Cross was responsible for paying Response. In addition, the Court found that with respect to the dispute over prescription drug charges, Response was entitled to the contracted rate of 90% for those items.

Also instructive is the case of City of Boston v. Aetna Life Ins. Co., 506 N.E. 2d 106 (Mass. 1987). In that case, the Supreme Judicial Court stated:

> "[I]f an insurer has promised to pay a hospital's charges without any limiting language (such as reasonable charges or charges customary or usual in the locality) and the hospital is entitled to collect those charges from a charge paying patient, the insurer may have an obligation to pay those lawful charges even if they are not reasonably related to the costs of services rendered or to other charges in the locality for the same service."

**Applying the Law to the Facts**

The Defendant here has not attempted to discover what the charges are for these same services at other hospitals. Instead, the Defendant is focused on the cost of the product to the hospital which does not take into consideration the fact that TMH provides free care to those in need and is providing a valuable services to the community by participating in medical education

programs. The cost of the product is not relevant to the issues in this case. Iron Workers agreed in an unambiguous contract to pay 79.88% of charges. Iron Workers is obligated to pay what it agreed to pay in the contract. Only if the contract does not specifically specify the amount owed is it appropriate to argue reasonable and customary charges. Even then, the Defendant can discover what charges are applicable in the community, but not costs. TMH has already provided information to Iron Workers concerning the charges of the product to every patient or payor.

Accordingly, for the foregoing reasons, Plaintiffs respectfully request that this Court deny Iron Workers' Motion to Compel.

Respectfully Submitted,

Linn F. Freedman (By Steven Richard #4403)

Linn F. Freedman (#4778)
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Telephone: (401) 454-1108
Fax: (866) 807-6614

Date: May 17, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of May, 2006, I caused a true copy of the within Memorandum in Support of Objection to Motion to Compel to be sent via first-class mail to:

Matthew T. Oliverio, Esq.
Oliverio & Marcaccio, LLP
55 Dorrance Street, Suite 400
Providence, RI 02903

Michael J. Lepizzera, Jr. Esq.
Lepizzera and Laprocina
301 Metro Center Blvd., #102
Warwick, RI 02886

Susan Guevremont