UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LIFESPAN PHYSICIANS PROFESSIONAL SERVICE ORGANIZATION, and THE MIRIAM HOSPITAL : : : : v. : : HEALTHCARE VALUE MANAGEMENT : INC. and IRON WORKERS DISTRICT : COUNCIL OF NEW ENGLAND WELFARE : FUND : | C.A. No. 05-239S |

**MEMORANDUM AND ORDER**

This matter is presently before the Court on a Motion to Compel (Document No. 40) (the "Motion") filed by Defendant, Iron Workers District Council of New England Welfare Fund (the "Fund"). The Fund seeks to compel Plaintiffs to more fully respond to its Interrogatories 13 through 16, 19 and 20. Plaintiffs filed a timely Objection to the Fund's Motion to Compel.

The Motion has been referred to me for determination. See 28 U.S.C. § 636(b)(1)(B); LR Cv 72(a). A hearing was held on June 1, 2006. For the reasons discussed below, the Fund's Motion to Compel (Document No. 40) is GRANTED in limited part and otherwise DENIED.

**Facts**

The Iron Workers District Council of New England is a labor organization representing skilled construction workers throughout New England. The District Council consists of seven regional local unions which have a presence in each of New England's six states. Rhode Island is covered by Iron Workers Union Local No. 37 which is headquartered in East Providence, Rhode Island. As part of the benefits package available to District Council members and retirees, the

District Council has established the Fund, a self-insured health and welfare fund, to provide medical, dental, vision and other fringe benefits to eligible members and retirees.

On November 13, 2003, John Doe, a Fund participant, sought emergency treatment at The Miriam Hospital ("TMH") and was admitted for approximately two weeks. Mr. Doe received extensive treatment, medication and blood products during his stay at TMH including Factor VIII and Gammagard. This litigation is a payment dispute regarding the services provided to Mr. Doe by TMH. The total amount in dispute is approximately $480,000.00 of which nearly half, or $236,000.00, has been paid by the Fund. Plaintiffs have brought claims against the Fund related to the non-payment including breach of contract, misrepresentation and unjust enrichment. The Fund has counterclaimed for unjust enrichment/quantum meruit and breach of an implied-in-fact contract. In its Motion to Compel, the Fund seeks, <u>inter alia</u>, disclosure of "the cost that the plaintiffs paid to purchase" the drugs Factor VIII and Gammagard. Plaintiffs strenuously object and contend that this purchase price information is proprietary and has no possible relevance to any claim or defense asserted in this case.

**Discussion**

Under Fed. R. Civ. P. 26(b)(1), a party may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Relevant information does not need to be admissible at trial so long as it appears reasonably calculated to lead to the discovery of admissible evidence.

Given this standard, it is first necessary to review the pleadings and the claims/defenses asserted in order to determine whether the discovery sought is relevant thereto. Plaintiffs' First Amended Complaint (the "Complaint") is primarily one for breach of contract. Plaintiffs contend

that the Fund is contractually obligated to pay "79.88% of <u>charges</u>" for the healthcare services provided by TMH to Mr. Doe. First Amended Complaint ("FAC"), ¶¶ 41, 43. (emphasis added). The Fund has two counterclaims. The first is for unjust enrichment/quantum meruit and claims that Plaintiffs "fail[ed] to assess the reasonable and customary <u>charges</u> for the pharmacy and blood product services provided to [Mr.] Doe." Counterclaim, ¶ 28. (emphasis added). The second is for breach of an implied-in-fact contract and claims that Plaintiffs breached such implied contract "by failing to base their invoice on the reasonable and customary <u>charges</u> for pharmacy and blood storage services provided to [Mr.] Doe." Counterclaim, ¶ 32. (emphasis added).

Plaintiff's Complaint also includes a claim of unjust enrichment (Count V) which alleges that the Fund has benefitted from its wrongful refusal to pay and that such failure to pay Plaintiffs "for the <u>value</u> of the medical services [TMH] provided to Mr. Doe has damaged" Plaintiffs. FAC, ¶¶ 58, 59. (emphasis added). At the hearing, this Court questioned whether this unjust enrichment claim might possibly open the door to discovery of the cost information sought by the Fund since it was not based in contract. In response, Plaintiffs' counsel vehemently argued that the unjust enrichment claim "is a contract claim, absolutely," and that it did not so open the door. Plaintiffs' counsel further represented that she intended to move to amend the Complaint on her clients' behalf, in part, to drop the unjust enrichment claim.

As to Plaintiffs' counsel's contention that the unjust enrichment claim is "absolutely" a contract claim, this Court disagrees. First, Plaintiffs bring separate claims against the Fund for breach of contract (Count II), breach of duty of good faith and fair dealing (Count IV), book account (Count VI) and attorneys' fees under R.I. Gen. Laws § 9-1-45 for an indefensible breach of contract (Count VII). If the unjust enrichment claim was merely another contract claim, it would be

redundant of these contract-based claims. Second, the particular allegations (FAC, ¶¶ 58 and 59) of the unjust enrichment claim do not reference any contract or breach thereof.

Finally, under Rhode Island law, "[u]njust enrichment is an equitable doctrine that, in the <u>absence of an enforceable contract</u>, allows a plaintiff to recover a benefit transferred to a defendant if that defendant's ongoing possession would be inequitable." <u>Café La France, Inc. v. Schneider Securities, Inc.</u>, 281 F. Supp. 2d 361, 375 (D.R.I. 2003) (emphasis added) (<u>citing</u> <u>Doe v. Burkland</u>, 808 A.2d 1090, 1095 (R.I. 2002)). In order to recover for unjust enrichment, a plaintiff must prove that (1) a benefit has been conferred, (2) the defendant appreciated the benefit, and (3) the defendant accepted the benefit in a manner in which it would be inequitable for the defendant to retain the benefit without payment. <u>R.I. Bhd. of Corr. Officers v. Rhode Island</u>, 264 F. Supp. 2d 87, 105 (D.R.I. 2003) (citation omitted). A party claiming unjust enrichment is not required to prove the existence of a contract or the adverse party's breach of such contract. The remedy for unjust enrichment is not contractual but rather is equitable restitution, i.e., "the measure of a defendant's gain rather than a plaintiff's loss." <u>Caseau v. Belisle</u>, No. PC 01-4441, 2005 WL 2354135 (R.I. Super. Sept. 26, 2005) (citation omitted).

Since Plaintiffs' unjust enrichment claim is not a contract claim and seeks equitable restitution, i.e., "the value of the medical services" provided to Mr. Doe, it arguably would have opened the door to the discovery of cost information. However, Plaintiffs' counsel represented that her clients will be dropping this claim and they have already dropped a similar <u>quantum meruit</u> claim. Thus, the issue is moot as to the scope of discovery related to these claims and this Court need not decide that particular issue.

That then brings us to the issue of whether the remaining claims and defenses entitle the Fund to discover cost information as to Factor VIII and Gammagard. This Court concludes that they do not. Plaintiffs' contract claims allege that the Fund is required to pay 79.88% of the total <u>charges</u> for the medical services provided to Mr. Doe. The Fund's counterclaims contend that Plaintiffs failed to assess the "reasonable and customary <u>charges</u>" for the medical services provided to Mr. Doe. Since these claims and defenses focus on the amount of TMH's "charges" and whether those "charges" are "reasonable and customary" in the community, they do not open the door to the discovery of cost information. Such cost information is not relevant in determining what TMH normally charges for the medical services in question and what other Hospitals charge for those same services. Mr. Doe received emergency care at TMH. This is not a case where Mr. Doe, or the Fund on his behalf, could shop around and try too find another less expensive source for Factor VIII or Gammagard. The Fund was obligated to insure Mr. Doe's medical needs and, since his condition required emergent care, Mr. Doe's options were limited to going to an acute care hospital with an emergency department and one which was in close proximity to his home or the place where he was stricken with illness. In other words, if Mr. Doe was not treated at TMH, he would have been treated at some other hospital in the region and the Fund presumably would have some level of obligation to pay those hospital charges. Thus, as noted above, the relevant information is what TMH charges for the services in question and what other regional hospitals charge. Further, in any event, the relevance of cost information for two single drugs when reviewing overall charges is questionable at best when one considers the overhead attendant to operating a major, not-for-profit teaching hospital with an emergency department and uncompensated care obligation.

## Conclusion

For the reasons discussed above, the Fund's Motion to Compel (Document No. 40) is GRANTED in limited part and otherwise DENIED. In particular, Plaintiffs' objections to Interrogatories 13, 14, 15 and 16 are sustained and the Fund's Motion to Compel is DENIED as to those interrogatories. As to Interrogatories 19 and 20, Plaintiffs did not object and their answers are not fully responsive. Plaintiffs shall supplement their responses to Interrogatories 19 and 20 with more responsive answers within twenty (20) days of the date of this ORDER. LR Cv 37(b).

/s/ Lincoln D. Almond

LINCOLN D. ALMOND
United States Magistrate Judge
June 5, 2006